■ In the Matter of LEONARD WOLCOTT, Respondent, v REBECCA COOK, Appellant. [697 NYS2d 201] —Peters, J. Appeal from an order of the Family Court of Columbia County (Leaman, J.), entered February 17, 1998, which, *inter alia*, granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, for custody of the parties' son.

The parties are the parents of two children, Christopher (born in 1990) and Samantha (born in 1988). Pursuant to a stipulation incorporated into a November 1993 order, petitioner (hereinafter the father) had sole custody of Samantha, respondent (hereinafter the mother) had sole custody of Christopher and each was afforded liberal visitation with the noncustodial child as mutually agreed.

On December 15, 1997, the father sought to modify the custody order and obtain sole custody of Christopher due to the improper care provided by the mother and the child's place-

ment, for over three months, with an unrelated third party. On January 22, 1998, Family Court granted the father temporary residential custody pending a hearing. Thereafter, the mother filed a petition requesting custody of both children. These petitions were addressed during a three-day fact-finding hearing.

In support of her petition, the mother proffered the testimony of, *inter alia*, Barbara Pulver, a bus driver. Pulver testified that when Samantha was in the father's care, she observed the child to be inappropriately dressed for the season or weather conditions on various occasions. Barbara Van Allen, the father's landlord, testified that due to occupancy restrictions, the father would have to move if he were awarded custody of both children. While the mother admitted that her home was in "pretty bad condition" due to a lack of funds to pay for trash removal, she attributed conditions observed by Lionel Winters, who resided with her for a short while, to be seasonal or environmentally based. While denying allegations that she failed to provide adequate food or nutrition to Christopher, she did admit that she had temporarily placed her son with a third party.

The father, in support of his petition, testified that he became aware of unsanitary conditions in the mother's home when he helped her move furniture. He observed garbage and food strewn around the apartment as well as an infestation of cockroaches. Winters, who had stayed with the mother, testified that in July 1997 he spent two weeks cleaning her home, filling 39 30-gallon bags with garbage. He described the garbage as being secreted in closets, on top of tables, on the stove and flowing out of the bedrooms. Winters also testified that on at least 50 occasions the mother failed to feed Christopher due solely to her laziness and that on numerous occasions he observed her physically disciplining him by picking him up by his throat and hitting him. Winters testified that her conduct caused him to report her to Child Protective Services on three separate occasions. Finally, Winters related that when he moved back into the mother's home in late December 1997, he hauled away 18 more bags of garbage.

Records of the Columbia County Department of Social Services admitted into evidence revealed an open Child Protective Services investigation against the mother and 11 indicated reports spanning eight years with respect to the parties' care of the children. Testimony also detailed the father's disabling chemical sensitivity problem and the effects that such exposure has on his ability to care for the children. However, the father asserted that he was capable of assuming their care and, if

granted custody, would move to a larger apartment to ensure that each would have their own bed. Upon these conditions, the Law Guardian recommended that custody be placed with him and Family Court agreed. The mother appeals.

Upon our review, we find no evidence which would warrant us to disturb Family Court's order since "[t]he overriding concern in any custody determination is the best interests of the children" (*Matter of Farnham v Farnham*, 252 AD2d 675, 676; *see, Eschbach v Eschbach*, 56 NY2d 167, 171; *Friederwitzer v Friederwitzer*, 55 NY2d 89, 94). While Family Court must consider numerous factors in order to make a proper determination (*see, Eschbach v Eschbach, supra*, at 172; *Matter Yelverton v Stokes*, 247 AD2d 719, *lv denied* 92 NY2d 802; *Matter of Saunders v Saunders*, 60 AD2d 701), great deference will typically be accorded to its findings, if properly supported, due to its unique opportunity to assess the credibility of testimony and observe witness demeanor (*see, Eschbach v Eschbach, supra*, at 173; *Matter of Farnham v Farnham, supra*, at 676; *Matter of Blair v Blair*, 243 AD2d 758, *lv denied* 91 NY2d 804).

Finding a sound and substantial basis to support Family Court's determination, we reject any contention that the father's ability to care for the children is so undermined by his physical condition so as to prevent his assumption of the role of legal custodian for both children. We further reject any contention that the court failed to give the parties' voluntary agreement the weight it should have been accorded in light of the testimony concerning the mother's neglect of the children and the appalling condition of her home. Recognizing that expert testimony may be proffered to assess the impact that a change in custody would have on a child, we emphasize that it is but one factor that may be considered by the court in making a determination of this kind (*see, Eschbach v Eschbach, supra*, at 173; *Matter of Pasco v Nolen*, 154 AD2d 774). The lack of such testimony under these extreme circumstances is simply not determinative.

Cardona, P. J., Mikoll, Yesawich Jr. and Mugglin, JJ., concur. Ordered that the order is affirmed, without costs.