In the Matter of APRIL E. LYNCH, Respondent, v DOUGLAS N. GILLOGLY JR., Appellant. (And Another Related Proceeding.) [920 NYS2d 437]—

Spain, J.P.

The parties, the unwed parents of a daughter (born in 2006), became involved in a romantic relationship while respondent (hereinafter the father), a resident of Tompkins County, was living out of town and working on a construction project in the Village of Dolgeville, Herkimer County. At that time, the father was also involved in a live-in relationship with a woman in the Village of Freeville, Tompkins County; petitioner (hereinafter the mother) was aware of that relationship. In early 2002, when the construction project was almost completed, the father—in order to continue to pursue his relationship with the mother—persuaded her to move with her two older daughters (born in 1994 and 1998) to Freeville, promising to provide them with a home and financial assistance. He bought her a house and supported her and her children both emotionally and financially, regularly staying at their home while continuing to also reside with his live-in companion who he led to believe that he was out of town on business during his absences. Between 2002 and 2006, the father was supporting both the home of the mother, with whom he continued his romantic relationship, and that of his live-in companion, who he married after she became pregnant with their son (born in 2005). The mother became pregnant with the subject child in 2006 and, soon after her birth, the mother and father's relationship became strained. In 2009, the mother commenced the instant proceeding seeking joint custody and physical placement of the child with her and permission to return to Dolgeville with the child, 2½ hours away. The father thereafter cross-petitioned for sole custody and the mother subsequently amended her petition, requesting

sole custody. Following a fact-finding hearing, Family Court granted the mother sole custody and approved her relocation; the father was granted specific liberal parenting time, including alternate weekends, three-day weekends when the child is not in school and alternating full weeks during the summer. The father now appeals.

Family Court properly granted sole custody to the mother and permitted her requested relocation. In making an initial custody determination, the overriding priority is the best interests of the child (*see Matter of Schneider v Lascher*, 72 AD3d 1417, 1418 [2010], *lv denied* 15 NY3d 708 [2010]; *Matter of Richardson v Alling*, 69 AD3d 1062, 1063 [2010]). In undertaking this best interests analysis, "Family Court was required to consider various factors, including how the decision would impact on the child[ ]'s stability, the home environment of both parents, each parent's willingness to foster a relationship with the other parent, and their past performance and ability to provide for the [child's] overall well-being" (*Matter of White v White*, 77 AD3d 1073, 1074 [2010] [internal quotation marks and citations omitted]; *see Matter of Clupper v Clupper*, 56 AD3d 1064, 1065-1066 [2008]). In addition to this nonexhaustive list, all other relevant factors must be considered (*see Matter of Troy SS. v Judy UU.*, 69 AD3d 1128, 1131 [2010], *lv denied* 14 NY3d 912 [2010]; *Matter of Solomon v Long*, 68 AD3d 1467, 1468 [2009]), including a parent's decision to relocate (*see Malcolm v Jurow-Malcolm*, 63 AD3d 1254, 1255-1256 [2009]) and the effect an award of custody would have on the child's relationship with the noncustodial parent (*see Matter of Lukaszewicz v Lukaszewicz*, 256 AD2d 1031, 1033 [1998]). As this is an initial custody determination, it is not necessary to adhere to a strict application of the relevant factors to be considered in a potential relocation as enunciated in *Matter of Tropea v Tropea* (87 NY2d 727 [1996]; *see Ostrander v McCain*, 68 AD3d 1480, 1481 [2009]; *Furman v Furman*, 298 AD2d 627, 628-629 [2002], *lv dismissed and denied* 99 NY2d 575 [2003]), and Family Court's determination should be accorded deference unless it lacks a sound and substantial basis in the record (*see Matter of Burdick v Babcock*, 59 AD3d 826, 827 [2009]; *Matter of De Losh v De Losh*, 235 AD2d 851, 853 [1997], *lv denied* 89 NY2d 813 [1997]).

Here, the mother has always been the subject child's primary caregiver, and the child has always lived with her mother and older sisters, with the father coming and going between his two households. However, the record indicates that the mother has a history of alcohol abuse and alcohol-related driving convictions, the second of which was a conviction for driving while

intoxicated that occurred after the child was born.* There is also some evidence that the mother may suffer from bouts of untreated depression. The record also shows that the father, after his relationship with the mother ended, greatly reduced his financial support, began secretly tape-recording his interactions with the mother as potential evidence against her, and continued to do so even after his attorney advised him to stop. Moreover, the father admitted to grossly deceiving his wife for a protracted period of time about his continuing affair and the expected child with the mother. Despite these and other shortcomings, the record indicates that both parties love and can provide for the child (see Matter of Robinson v Davis, 58 AD3d 1041, 1042 [2009]). In addition, the child has loving relationships with both of the mother's other daughters, the father's young son, the father's parents and her large extended family in Dolgeville. Considering all of the relevant facts, and deferring to Family Court's assessment of credibility and its determination, we find a sound and substantial basis in the record for its conclusion that an award of sole custody to the mother is in this young child's best interests.

Turning to the mother's proposed return to Dolgeville, evidence points toward an improved economic and emotional environment for the child and her mother upon relocation. Testimony at the fact-finding hearing indicates that the father financially supported the mother in Freeville from 2002 until 2007, shortly after the child's birth, providing the mother with a place to live, assisting with household tasks and paying for, among other things, her fuel, car and utilities. However, later in 2007, after the parties' relationship deteriorated, the father's financial assistance significantly decreased, resulting in the mother and her children losing their home and vehicle and causing her to file for bankruptcy.

By comparison, Dolgeville is where the mother grew up and where she lived in 2002, when the father persuaded her to move to Freeville. While the father characterizes the environment quite differently, pointing out legitimate concerns about some members of the mother's family, the record supports Family Court's finding that the mother's social and economic situation in Freeville was only worsening, as was the relationship between the parties. By contrast, were she to move back to Dolgeville, the mother and child would have a viable support network that would be able to help care for the child while the

---

* The mother testified that she rarely drinks anymore and has completed all of the dispositional requirements of her sentence, including a drinking and driving program and six sessions with a counselor.

mother is at work, housing and employment, all of which would provide a more stable home life for the child. In addition, the mother expected to obtain her Bachelor's degree before the move, which would greatly enhance her ability to find a job and to earn a substantially greater income. Although this determination results in the child residing a significant distance away from the father, the arrangement should not significantly impede his ability to foster a close and loving relationship with his daughter, especially given the amount of parenting time that he was awarded.

Finally, contrary to the father's argument, Family Court did not merely adopt the position of the attorney for the child without due consideration. While Family Court's ruling in the instant case was somewhat consistent with the attorney for the child's position, nothing in the record suggests that the court did not properly consider the appropriate factors in rendering its determination (see Matter of Card v Rupert, 70 AD3d 1264, 1265 [2010]; Matter of Kilmartin v Kilmartin, 44 AD3d 1099, 1102 [2007]) nor is there any evidence suggesting that the usual deference to the court should not be accorded (see Matter of Wentland v Rousseau, 59 AD3d 821, 823 [2009]). As the court noted, "both parents have brought this dilemma upon themselves." Moreover, the father's decision to carry on a double life has reaped predictable deleterious consequences for both families and thrust upon the courts the unenviable task of sorting out the resulting tangled mess in a manner that puts the needs of the child first.

Lahtinen, Garry and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.