■ In the Matter of WILLIAM R. BAKER, Respondent, v TIFFANY M. SPURGEON, Appellant. [927 NYS2d 399]—

Egan Jr., J. Appeal from a corrected order of the Family Court of Essex County (Meyer, J.), entered December 28, 2009, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the unmarried parents of a daughter (born in 2001). The parties are lifelong residents of Ohio, where their child was born and where they resided together off and on for seven years. In September 2007, the father was convicted in Ohio of a felony and served six months in jail. Following his release in 2008, he was placed on probation for five years with the condition that he relocate to Essex County. Although the mother and the child initially remained in Ohio, they moved to Essex County in October 2008, and the child was enrolled in school. Difficulties thereafter arose regarding the father's visitation with the child, and he petitioned for custody in December 2008. By order entered December 15, 2008 upon consent, Family Court awarded the parties joint legal custody with primary physical custody to the mother.

Difficulties between the parties persisted and, following the completion of the 2008-2009 school year, the child and mother returned to Ohio. In July 2009, the father commenced the instant proceeding seeking return of the child to Essex County and modification of the 2008 custody order. At the conclusion of the hearings that followed, Family Court granted the petition, awarded the parties joint legal custody and ordered the mother to either return to Essex County with the child, in which case she would retain primary physical custody, or, alternatively, remain in Ohio and return the child to Essex County, in which case the father would assume primary physical custody and she would be granted liberal visitation. This appeal by the mother ensued.[1]

Initially, we note that inasmuch as the child resided in this state for less than six months prior to the father's commencement of the initial custody proceeding in December 2008, New York did not qualify as the "home state" of the child (see Domestic Relations Law § 75-a [7]; § 76 [1] [a])[2] and, therefore, Family Court did not have subject matter jurisdiction to

1. During the pendency of this appeal, the parties commenced additional proceedings in Family Court that are pending at this time.

2. Nor does it appear that any of the remaining jurisdictional predicates would apply here (see Domestic Relations Law § 76 [1] [a]-[d]).

entertain such application or render the resulting December 2008 custody order. Accordingly, we must treat the instant proceeding as an initial custody determination rather than as a modification proceeding.

Turning to the merits, "[t]he principal concern in any child custody dispute is the best interests of the child, to be determined by reviewing such factors as maintaining stability for the child, the child's wishes, the home environment with each parent, each parent's past performance, relative fitness, ability to guide and provide for the child's overall well-being, and the willingness of each parent to foster a relationship with the other parent" (*Porcello v Porcello*, 80 AD3d 1131, 1133 [2011] [internal quotation marks and citation omitted]; *see Farina v Farina*, 82 AD3d 1517, 1518 [2011]; *Matter of Grant v Grant*, 47 AD3d 1027, 1028-1029 [2008]). Because we are treating this as an initial custody determination, strict application of the relevant factors to be considered in a potential relocation as set forth in *Matter of Tropea v Tropea* (87 NY2d 727 [1996]) is not required (*see Matter of Lynch v Gillogly*, 82 AD3d 1529, 1530 [2011]; *Matter of Schneider v Lascher*, 72 AD3d 1417, 1417 [2010], *lv denied* 15 NY3d 708 [2010]; *Malcolm v Jurow-Malcolm*, 63 AD3d 1254, 1255 [2009]). Rather, the parent's decision to relocate, as well as "the effect an award of custody would have on the child's relationship with the noncustodial parent," are other relevant factors to consider (*Matter of Lynch v Gillogly*, 82 AD3d at 1530; *see Malcolm v Jurow-Malcolm*, 63 AD3d at 1256).

Here, the record establishes that, although the father did help take care of the child while living with the mother in Ohio, the mother was the primary caregiver throughout the child's life. Notably, the father did not live with or substantially care for the child, except during brief periods of visitation, after he moved out of the parties' shared home in August 2007, did not know the names of her teachers or friends at school, did not attend parent-teacher conferences, rarely attended the child's extracurricular activities and has never taken the child to a doctor's appointment. Both parties' living arrangements appear to be adequate and, at the time of the hearing, the mother was employed part time and was pursuing a medical assistant degree. The father does not work but, rather, receives Social Security disability benefits due to an unspecified mental illness that apparently includes an "explosive disorder," for which he receives counseling. In addition, the father has a lengthy history of alcohol abuse and has had several alcohol-related driving offenses—despite not possessing a valid driver's license. The

parties' relationship has been generally contentious, as evidenced by a harassment charge lodged against the mother following an altercation with the father's girlfriend and the father's history of domestic violence against the mother. In this regard, it appears that the father occasionally opted to forgo visitation and telephone calls with the child in order to avoid arguments with the mother.

As to the mother's relocation with the child, the mother testified that she returned to Ohio after losing her job in New York and, as noted previously, was pursuing a medical assistant degree at the time of the hearing. The record reflects that, in addition to being lifelong residents of Ohio prior to moving here, both parties have significant ties to and extended family living in that state, including the father's grandparents and his other daughter, with whom the child enjoys a close relationship. The record also indicates that the mother's family is available to assist her and care for the child while she works and pursues her degree.

Based upon our review of the record as a whole, and giving due consideration to all of the relevant factors, we find that Family Court's determination lacks a sound and substantial basis in the record and that it is in the child's best interest for custody to be awarded to the mother. While we acknowledge that this results in the child residing a significant distance from the father, it was the father's criminal conduct that prompted his move to New York in the first instance and triggered the resulting disruption of his relationship with his daughter. Until the father's probation expires, thereby presumably alleviating any obstacle to his return to Ohio, the father's relationship with his child may be maintained through the exercise of appropriate visitation, and we remit this matter to Family Court for the purpose of devising such a schedule. The parties' remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Peters, J.P., Rose, Malone Jr. and Stein, JJ., concur. Ordered that the corrected order is reversed, on the law, without costs, custody awarded to respondent and matter remitted to the Family Court of Essex County for further proceedings not inconsistent with this Court's decision.