■ In the Matter of REBECCA SULLIVAN, Respondent, v DANIEL SULLIVAN, Appellant. (And Another Related Proceeding.) [933 NYS2d 777]—

Spain, J.P.

The parties met in August 2008, married in October 2008 and resided together until March 2009, when respondent (hereinafter the father) was incarcerated in state prison upon his guilty plea to assault in the second degree. Petitioner (hereinafter the mother) thereafter gave birth to their child in August 2009 and on approximately 10 occasions—until June 2010—transported him to visits with the father in prison, a three to four-hour one-way drive. During this time, the mother asked for a divorce and began dating—and became pregnant with a second child with—her current boyfriend, who is a Marine on active duty stationed, as relevant here, in Quantico, Virginia.

In April 2010, the mother commenced a proceeding seeking sole custody of the child, and Family Court issued such a temporary award to the mother. The mother and child relocated in July 2010 to Virginia—without the father's consent—to live with the new boyfriend. The father, still incarcerated, then filed a cross petition for "shared custody upon [his] release" and visitation, to allow him to parent and bond with the child when he is released from prison. Family Court held a fact-finding hearing in July 2010 at which only the parties testified. In a well-reasoned decision, the court awarded the mother sole custody and directed her to provide the father with monthly pictures and updates and biweekly telephone calls to the prison. The court declined to order the mother to return to the Capital District. The father, who has since been released from prison to parole, now appeals.

Given that Family Court was making an initial custody determination, "the overriding priority is the best interests of the child" (*Matter of Lynch v Gillogly*, 82 AD3d 1529, 1530 [2011]; *see Matter of Torkildsen v Torkildsen*, 72 AD3d 1405, 1406 [2010]). As the parties and court recognized, the court was not required to strictly apply the relocation factors set forth in *Matter of Tropea v Tropea* (87 NY2d 727, 739-741 [1996]), although the mother's relocation was "a very important factor" among all factors to be considered in making a best interests determination, as was the effect of the move on the child's relationship with the father if the mother were awarded custody (*see Matter of Baker v Spurgeon*, 85 AD3d 1494, 1496 [2011], *lv dismissed* 17 NY3d 897 [2011]; *Matter of Lynch v Gillogly*, 82 AD3d at 1530; *Matter of Schneider v Lascher*, 72 AD3d 1417, 1417-1418 [2010], *lv denied* 15 NY3d 708 [2010]). "Recognizing the advantageous position of Family Court to evaluate the testimony and assess the credibility of witnesses, we accord great deference to that court's custodial determination provided that it is supported by a sound and substantial basis in the record" (*Mat-*

*ter of Torkildsen v Torkildsen*, 72 AD3d at 1406 [citations omitted]).

The evidence at the hearing established that the mother had been steadily employed full time in the nursing field and was at all times the child's primary caretaker; while at work, she received caretaking help from her brother and mother, with whom she resided in Schenectady County. Prior to her move, she demonstrated a willingness to foster the child's relationship with the father by driving him to see the father in prison a great distance many times (*see id.* at 1407). The court found her to be mature and was troubled by her testimony, which the court credited, that the father shook the one-month old child during two prison visits and, on other occasions, failed to console or comfort the crying infant.

Of course, we share Family Court's condemnation of the mother's decision to take the child to Virginia against the father's known opposition and while her petition was pending, given the absence of an urgent need to move at that time, leaving behind a stable home and employment. The court also properly took into consideration, however, that the mother promptly secured stable employment and child care in Virginia that allowed her to work part time while residing with her boyfriend, who she plans to marry after obtaining a divorce, enabling her to care for the child and his soon to be born sibling.

With regard to the father, he has never provided financially for the child and was in prison when the child was born. He took no steps to prepare for the child's arrival, remaining voluntarily unemployed from the time he met the mother until he was incarcerated (August 2009 to March 2010) so that he could focus solely on his pending criminal charges. He has a history of methadone addiction and, while he had completed beneficial courses for substance abuse, aggression therapy and vocational training in prison, he remained incarcerated at the time of the hearing and lacked the ability to provide or care for the child. Family Court rightfully refused to make a shared custody order to take effect at the time of his release,* and, as such, an order would have been premature and, thus, inappropriate.

Based upon the foregoing, Family Court concluded that the mother is the parent more capable of maintaining steady

---

* The father's tentative plans upon his release to parole were to reside with his father in Pittsfield, Massachusetts and resume his work for his father's construction business, if allowed by parole restrictions, or to move several hours north to reside with his mother. While he testified that he would stay in the Capital District if necessary to visit with the child, he had no viable plan for doing so.

employment in order to provide for the child and that she is living in a safe and stable environment. The court's determination that the child's best interests will be furthered by an award of sole custody to the mother is fully supported by a sound and substantial basis in the record and will not be disturbed (see id. at 1406). As the father has since been released from prison, his appeal from the denial of that part of his petition requesting in-person visitation while incarcerated is moot. He remains entitled to apply for visitation under his present circumstances.

The father's further claims that he was denied meaningful representation during the custody proceedings are belied by the record (see Family Ct Act § 262; Matter of Jolynn W. v Vincent X., 85 AD3d 1217, 1218-1219 [2011], lv denied 17 NY3d 713 [2011]; Matter of Elizabeth HH. v Richard II., 75 AD3d 670, 670 [2010]). From the outset, counsel endeavored to protect the father's rights, requesting an adjournment to speak with him via telephone in prison before advocating the father's position; counsel strenuously objected when the mother moved while the proceedings were pending, seeking a directive, albeit unsuccessfully, that she move back and provide transportation for prison visitation. At the hearing, counsel vigorously cross-examined the mother, aiming to undermine her credibility. Counsel was both competent and zealous (see Matter of Rosi v Moon, 84 AD3d 1445, 1447 [2011]). The shortcomings in the father's proof cited by the court stemmed from the father's own failure when testifying to establish his ability to support and provide for the child while incarcerated or upon his release.

Rose, Malone Jr., Stein and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.