Devine, J.
Appeal from an order of the Family Court of Franklin County (Silver, J.H.O.), entered June 26, 2013, which, among other things, granted respondent’s application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties’ child.
Eetitioner (hereinafter the mother) and respondent (hereinafter the father) are the unmarried parents of a daughter (born in 2003). Within months of the child’s birth, the mother agreed to have the child’s maternal grandmother care for the child in the Town of Dickinson, Franklin County, so that the mother could leave the area to attend college. The child has lived continuously in that community since her birth. The mother was away at school from 2003 until she earned her undergraduate degree in 2008, occasionally visiting the child on certain weekends, holidays or school vacations. After graduation, the mother moved to Delaware with her then-boyfriend until 2011, while the child remained with the maternal grandmother. The father *1353 enlisted in the military before the child was born and was twice deployed to Iraq, rarely able to see the child until he was discharged in 2007.
When the mother returned to New York in 2011 and indicated her intent to relocate the child to Saratoga County, the maternal grandmother filed a petition for sole legal and physical custody of the child, which Family Court (Hall, J.) granted temporarily. However, when the maternal grandmother withdrew her petition and moved out of state, Family Court granted temporary primary physical custody of the child to the father, which order included parenting time for the mother. The parties had each commenced a proceeding seeking custody and primary physical placement of the child. After a trial on the respective custody petitions, Family Court awarded the parties joint legal custody, with primary physical placement of the child to the father, and established a visitation schedule for the mother. The mother now appeals.
The mother contends that Family Court’s order granting primary physical custody of the child to the father was not in the child’s best interests and must be reversed by this Court. We disagree. In making its custody determination, Family Court was obligated to consider “the parents’ past performance and relative fitness, their willingness to foster a positive relationship between the child and the other parent, as well as their ability to maintain a stable home environment and provide for the child’s overall well-being” (Matter of Alleyne v Cochran, 119 AD3d 1100, 1100-1101 [2014] [internal quotation marks and citations omitted]; see Matter of Holland v Klingbeil, 118 AD3d 1077, 1078 [2014]; Matter of Adams v Morris, 111 AD3d 1069, 1069-1070 [2013]). The child’s wishes are also considered by the court in making its final determination (see Matter of Windom v Pemberton, 119 AD3d 999, 999 [2014]). When making custody determinations, the best interests of the child is always the most important factor to consider (see Eschbach v Eschbach, 56 NY2d 167, 171 [1982]; Matter of Eck v Eck, 33 AD3d 1082, 1083 [2006]; Matter of Lopez v Robinson, 25 AD3d 1034, 1035 [2006]). Furthermore, “[g]iven the superior position of Family Court to evaluate the testimony and assess the credibility of witnesses,” we give great deference to its determination where it has adequate support in the record (Matter of Keen v Stephens, 114 AD3d 1029, 1030 [2014]; see Matter of Anson v Anson, 20 AD3d 603, 604 [2005], lv denied 5 NY3d 711 [2005]; Matter of Wolcott v Cook, 265 AD2d 748, 750 [1999]).
The record establishes that the child was raised by her maternal grandmother for the first nine years of her life, during *1354 which time the mother moved to several different places — all of which were a distance from the child — in order to pursue her academic and professional goals. Despite the maternal grandmother’s laudable efforts, the mother’s testimony clearly showed that, at the time of the trial, the mother no longer maintained a relationship with the maternal grandmother, nor did she encourage the child to communicate with her grandmother. In fact, during their trial testimony, the mother and the maternal aunt attempted to tear down the maternal grandmother, criticizing the manner in which she cared for the child for nine years. While the dissent opines that Family Court unfairly criticized the mother for trying to better herself by attending college and otherwise attaining financial and emotional stability, the evidence shows that, rather than reunite with the child after graduating from college, the mother moved out of state so that her boyfriend could find a new job. While the mother was out of state from 2008 to 2009, she made no attempt to have the child become a part of her daily life, testifying that she and her then-boyfriend thought it was in their “best interests” that they familiarize themselves with the area before relocating the child. However, even after returning to New York, the mother did not petition for custody of the child for another two years. Based upon evidence of this nature, Family Court reasonably found the mother’s excessive delay in seeking custody of the child was “the most concerning factor” weighing against granting primary custody to the mother, as was the mother “tak[ing] prolonged advantage of [the maternal grandmother’s] generosity, up until such time as when the mother decided that she was in a position of sound social and financial standing, such that she can now take care of her child.” We agree with Family Court’s assessment of the facts and circumstances of this case and further observe that, while the mother now seeks to uproot the child from the only community she has ever known, the mother has made no attempt during that time to integrate herself back into that community so that the relocation of the child might be avoided altogether.
While the father is far from perfect, the evidence portrays him in a different light. He testified that, although he made attempts to visit with the child while on leave from military duty, he was told by the mother, on more than one occasion, that he had no place in the child’s life. Upon being discharged from the military in 2007, the father made efforts to gain the trust of the maternal grandmother and worked with her and his mother in fashioning a visitation schedule so that he could build a relationship with the child.
Family Court further considered the parties’ respective *1355 parental strengths and weaknesses, specifically acknowledging that the mother had attained financial stability, owned a home with her husband in a good school district and could address the child’s health and educational needs. The court also took note of the father’s previous struggles with posttraumatic stress disorder and alcohol-related driving offenses, but heard positive testimony regarding the father’s successful rehabilitation and commitment to providing the child with a safe and stable home. The father further averred that he supported the child’s relationship with the mother and would remain flexible in scheduling visitation so that the child would be able to participate in family events with the mother’s extended family. Further, the father considered it important to encourage the child to maintain a relationship with the maternal grandmother, who had raised the child since infancy.
In its comprehensive and reasoned decision, Family Court concluded that, while both the mother and father are loving and competent parents who are dedicated to the child and are able to provide for her needs, keeping the child in the community where she has lived since birth would not only comport with the child’s wishes, but would also provide her with much needed stability. Family Court found that the mother’s proposal to relocate the child to Saratoga County was a concern in that it would remove the child from the place where she has established friendships, bonds with her paternal grandparents, has become involved in activities with the father — including participation in an American Legion youth service program and a recreational soccer league — and cares for her horse and other pets (see Matter of Barker v Dutcher, 96 AD3d 1313, 1313-1314 [2012]). Although relocation of the child was but one factor “among all factors to be considered in making a best interests determination” (Matter of Sullivan v Sullivan, 90 AD3d 1172, 1173 [2011]), we disagree with the dissent’s conclusion that the evidence weighs soundly and substantially in favor of granting primary physical custody to the mother. The mother and her spouse live in a larger house that is located in an affluent neighborhood, where the child will be able to spend time with the mother’s extended family; however, the father’s current living situation provides the child with similar opportunities. The dissent overlooks the close relationship that the child has formed with the father’s parents and other nearby relatives and friends, and it unnecessarily minimizes the child’s own express wishes that the custody arrangement remain as it currently stands. Although Family Court erroneously revealed certain matters that were discussed during the Lincoln hearing, such error does not undermine the court’s determination that the *1356 child’s best interests would be served by remaining with her father. Thus, as Family Court’s order has a sound and substantial basis in the record, its award of primary physical custody to the father shall remain undisturbed (see id.; Matter of Baker v Spurgeon, 85 AD3d 1494, 1497 [2011], lv dismissed 17 NY3d 897 [2011]).
Finally, although the mother asserts that Family Court should have given her greater visitation, Family Court’s order was constructed in such a way that the child would be able to spend sufficient time with both parents without unnecessarily disrupting the child’s academic and social schedule, and we find no reason to create an alternate arrangement (see Matter of Alleyne v Cochran, 119 AD3d at 1101-1102; Matter of Braswell v Braswell, 80 AD3d 827, 831 [2011]; Murray v Skiff-Murray, 289 AD2d 805, 807 [2001]).
Lahtinen, J.P., and Egan Jr., J., concur.