Matter of Thomas K. v Shauna L. (2025 NY Slip Op 05729)

Matter of Thomas K. v Shauna L.

2025 NY Slip Op 05729

Decided on October 16, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 16, 2025

CV-23-2333
[*1]In the Matter of Thomas K., Appellant,
v
Shauna L., Respondent. (Proceeding No. 1.)
In the Matter of Shauna L., Respondent,
v
Thomas K., Appellant. (Proceeding No. 2.)

Calendar Date:September 8, 2025

Before:Clark, J.P., Aarons, Lynch, Ceresia and Fisher, JJ.

Cordell Law, LLP, Albany (Asa S. Neff of counsel), for appellant.
LaClair & DeLuca, PLLC, Albany (Lauren DeLuca Horner of counsel), for respondent.
Elena Jaffe Tastensen, Saratoga Springs, attorney for the children.

Ceresia, J.
Appeal from an order of the Family Court of Essex County (Richard Meyer, J.), entered November 6, 2023, which, among other things, partially granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of the parties' children.
Thomas K. (hereinafter the father) and Shauna L. (hereinafter the mother), who never married, are the parents of the three subject children (born in 2018, 2020 and 2021). The father coaches elite alpine skiers and the mother is an airline sales executive. Both of their careers require varying amounts of travel. Beginning with the birth of their first child in 2018, the parties generally split their time between Park City, Utah and Lake Placid, New York over the next four years, with additional stays in Florida, where the father's parents live during the winter. The mother also spent extended periods with the children in Minnesota, where her parents and other relatives reside. At times, the father would be apart from the mother and children for weeks due to his work schedule. In February 2022, the father was working in the Town of Queensbury, Warren County when the mother moved to Minnesota with the children without informing the father. Upon learning of the move, the father believed that the relocation was only intended to be temporary. The father traveled to see the children in Minnesota twice over the next several months, with the mother closely monitoring his visits. The father thought that the mother and the children were living with the mother's parents but, unbeknownst to him, the mother had purchased a home for herself and the children.
In August 2022, the father filed a petition in New York seeking sole legal and physical custody of the children. The mother commenced a custody proceeding in Minnesota, wherein she obtained a limited order of protection against the father, and filed a motion in New York to dismiss the father's petition for lack of personal and subject matter jurisdiction, on the grounds that she and the children had been residing in Minnesota. A hearing was held pursuant to the Uniform Child Custody and Jurisdiction Enforcement Act (see Domestic Relations Law art 5-a), and it was determined that New York was the home state of the children for purposes of jurisdiction. Thereafter, in February 2023, the mother filed a cross-petition in New York seeking sole legal and primary physical custody of the children, as well as a court order allowing her to remain in Minnesota with them. Following a nine-day fact-finding hearing that occurred between June and August 2023, Family Court awarded the parties joint legal custody, with primary physical custody to the mother, permission for her to remain in Minnesota and generous parenting time for the father. The father appeals.[FN1]
"Where, as here, a parent's relocation initiates the commencement of a custody proceeding resulting in an initial custody determination, strict application of the relocation factors set forth in Matter [*2]of Tropea v Tropea (87 NY2d 727 [1996]) is not required" (Matter of Jesse HH. v Lindsey II., 233 AD3d 1410, 1411 [3d Dept 2024] [citations omitted], lvs denied 43 NY3d 906 [2025], 43 NY3d 906 [2025]; see Matter of Christopher MM. v Mackenzie NN., 237 AD3d 1271, 1273 [3d Dept 2025]). Rather, Family Court's central concern is the best interests of the children, which involves consideration of factors "including the quality of the parents' respective home environments, the need for stability in the child[ren]'s li[ves], each parent's willingness to promote a positive relationship between the child[ren] and the other parent and each parent's past performance, relative fitness and ability to provide for the child[ren]'s intellectual and emotional development and overall well-being" (Matter of Jahari BB. v Zada CC., 232 AD3d 1142, 1144 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Dusten T. v Trisha U., 235 AD3d 1215, 1216 [3d Dept 2025]). To be sure, a parent's decision to relocate "is a very important factor," but it must be considered as one of "the constellation of factors" pertaining to best interests, along with the effect that the relocation will have on the noncustodial parent's relationship with the children (Matter of Christopher MM. v Mackenzie NN., 237 AD3d at 1272 [internal quotation marks and citations omitted]; see Matter of Jahari BB. v Zada CC., 232 AD3d at 1144; Matter of Baker v Spurgeon, 85 AD3d 1494, 1496 [3d Dept 2011], lv dismissed 17 NY3d 897 [2011]). "Because Family Court is in a superior position to assess witness credibility and make findings of fact, this Court will not disturb Family Court's decision so long as it is supported by a sound and substantial basis in the record" (Matter of Jesse HH. v Lindsey II., 233 AD3d at 1412 [internal quotation marks and citations omitted]).
The hearing evidence demonstrated that the mother has always been the children's primary caregiver. She arranged their schooling and extracurricular activities, purchased the household groceries and the children's necessities, cooked, cleaned and did the children's laundry. The father generally did not participate in the children's activities, telling the mother that it was "[her] thing" and not his. He also slept with earplugs so that he would not be disturbed by the children when they awoke. The father expressed unwillingness to contribute to the children's expenses, instead requiring the mother to pay rent to him for the home in which they were living and then allowing her to deduct his portion of certain expenses from that rent.
As for the parties' respective travel requirements, the father travels extensively and spends many overnights away at races during the ski season between approximately late November or early December and late March or early April, and also takes an annual three-week work trip abroad during the offseason. The mother's job requires her to attend in-person meetings with her clients in midwestern [*3]and western cities a few times a month, but she is able to avoid overnight trips for the most part, particularly considering that she lives close to her airline's hub in Minnesota and can take advantage of frequent daily flights.
Family Court carefully weighed the hearing testimony and, while recognizing that the father is a fit and loving parent, determined that it would be in the children's best interests for the mother to have primary physical custody. In so doing, the court expressed severe disapproval of the mother's unilateral decision to relocate to Minnesota without the father's knowledge. However, as the court also acknowledged, "[w]hile a parent's resort to self-help in removing the child from the other parent is a factor that can militate strongly against such parent, it is not singularly dispositive" (Matter of Hostetler v Montanye, 30 AD3d 720, 721 [3d Dept 2006] [citations omitted], lv denied 7 NY3d 710 [2006]), and "an award of custody must be based on the best interests of the children and not a desire to punish a recalcitrant parent" (Matter of Baxter v Borden, 122 AD3d 1417, 1418 [4th Dept 2014] [internal quotation marks and citation omitted], lv denied 24 NY3d 915 [2015]; accord Matter of Aden HH. v Charish GG., 226 AD3d 1109, 1112-1113 [3d Dept 2024]).
Notwithstanding Family Court's displeasure with the mother's actions, the court found, and the record reflects, that the mother chose to withhold information about her move from the father because she feared his reaction to her ending their relationship, in light of his history of retaliating against people whom he felt had wronged him and his threats to "bury" the mother and turn the children against her if she ever left him. The court also noted that, during the parties' cohabitation, the father routinely belittled and criticized the mother in front of the children and, on one such occasion, the eldest child put his hands over the mother's ears and told her that he would protect her from the father. Although the mother candidly conceded that there was no physical abuse in the relationship, she felt isolated by the father's manipulation and control of her, which worsened over time. In addition, the mother has a network of family and friends to support her and the children in Minnesota, but has no such ties in New York. Thus, the
court ultimately concluded that the mother's self-help measures, while not commendable, were motivated by legitimate concerns. Notwithstanding the father's claim that the mother's professions of fear were not credible, the court had the opportunity to observe the mother's testimony and we defer to its assessment of her credibility (see Matter of Derek KK. v Jennifer KK., 196 AD3d 765, 769-770 [3d Dept 2021]; Matter of Adam E. v Heather F., 151 AD3d 1212, 1214 [3d Dept 2017]).
As for the father's contention that he should have been awarded primary physical custody because the children's "home base" is in New York, insofar as they were enrolled in school [*4]and saw doctors in New York before they moved to Minnesota, we disagree. These contacts were in the Village of Lake Placid, Essex County, not Queensbury — a 90-minute drive away — where the father now lives and works. The family never lived together in Queensbury and the record does not reflect any particular ties to that area on the part of the children. Further, although the father testified that his Queensbury position is stable and that he is not looking for another job, Family Court observed that his last few jobs had been of short duration, including two positions from which he was abruptly terminated, and the father indicated that he is "always aware" of other opportunities.
Given all of the above, and noting Family Court's provisions for extensive parenting time for the father — much of which will require travel that the mother has been directed to facilitate and subsidize — we find a sound and substantial basis in the record supporting the court's determinations concerning custody and relocation (see Matter of Aden HH. v Charish GG., 226 AD3d at 1112-1113; Matter of Adam OO. v Jessica QQ., 176 AD3d 1418, 1420 [3d Dept 2019]; Matter of Hostetler v Montanye, 30 AD3d at 722). The father's remaining contentions have been considered and deemed to be without merit.
Clark, J.P., Aarons, Lynch and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The attorney representing the children at the hearing recommended shared physical custody and a "week on week off" parenting time schedule. The appellate attorney for the children advocates for primary physical custody to remain with the mother.