■ In the Matter of CRAIG GRACI, Respondent, v TERESA M. GRACI, Appellant.—Order unanimously modified on the law

and facts and as modified affirmed without costs and matter remitted to Oswego County Family Court for further proceedings in accordance with the following Memorandum: After an evidentiary hearing, Family Court determined that both parties were caring and loving parents. It expressed concern that petitioner's computer interest might "dictate the tempo of his life" to the detriment of the children and concern that respondent's impending remarriage might distract her attention from the children. The court stated that it had considered all of the factors bearing upon the best interests of the children and found them to be evenly balanced. It concluded that respondent mother's filing of "unfounded allegations" that petitioner engaged in sexual misconduct with one of the children "ultimately tipped" the scales in favor of petitioner. Thus, the court granted the father's petition for joint custody and for primary physical custody of the two children.

We conclude that Family Court improperly relied upon respondent's filing of misconduct allegations in resolving the issue of the best interests of the children; that the court failed to set forth findings essential to its determination of best interests; and that a proper consideration and weighing of those factors relating to the children's best interests warrants an award of primary physical custody to respondent.

Family Court was obliged to set forth those facts essential to its decision *(see,* CPLR 4213 [b]; Family Ct Act § 165; *Matter of Jose L. I.,* 46 NY2d 1024, 1025). Although the court was not required to set forth the evidentiary facts, "it must state ultimate facts: that is, those facts upon which the rights and liabilities of the parties depend" *(Matter of Jose L. I., supra,* at 1025-1026; *see also, Clarke v Clarke,* 101 AD2d 911, 912; *Giordano v Giordano,* 93 AD2d 310, 311). Family Court made one limited finding that the parties were loving and caring parents, expressed some concern that each might have interests adversely affecting their attention to the children, and then conclusorily observed that it had considered the other relevant factors and found them to be evenly balanced. That conclusory observation deprived this Court of effective appellate review *(see, Matter of Jose L. I., supra,* at 1026). The court failed to set forth its analysis of those factors that traditionally affect the best interests of a child, namely, the relative fitness of each party, each parent's ability to provide for the emotional and intellectual development of the child, the ability to provide financially for the child, the quality of the home environment, the length of time and stability of prior custodial arrangements, the need of a child to reside with siblings,

and, though not determinative, the child's desires and preferences *(see, Eschbach v Eschbach,* 56 NY2d 167, 172-173; *Fox v Fox,* 177 AD2d 209, 210; *Matter of Gill v Gill,* 135 AD2d 1090, 1091; *Matter of Blake v Blake,* 106 AD2d 916). As a result, we are unable to review Family Court's ultimate factual finding regarding each of those factors and the weight it placed upon each factor relative to the best interests of the children.

Further, although a party's prior misconduct or "bad act" may be considered if that conduct impacts upon the best interests of the children, "an award of custody should ultimately be based on the best interests of the child and not a desire to punish the recalcitrant parent" *(Lenczycki v Lenczycki,* 152 AD2d 621, 623; *see also, Verity v Verity,* 107 AD2d 1082, 1084, *affd* 65 NY2d 1002). Such misconduct is of lesser importance in arriving at a best interests determination *(see, Friederwitzer v Friederwitzer,* 55 NY2d 89, 94). Family Court made no finding that respondent's filing of sexual misconduct allegations had an impact upon the best interests of the children. In fact, the court observed that petitioner had accepted what was done without animosity. Although the misconduct petition ultimately was abandoned, the record reveals that respondent filed the petition only after the police had interviewed the child and after the probation department had instructed her to file the Family Court petition. Respondent clearly faced a difficult choice. If she did not file the petition, her failure might have been treated as an inability to protect the child. By filing the petition, respondent risked an unfavorable custody determination unless she was positive that the petition would be successful. In the circumstances of this case, Family Court placed undue emphasis upon respondent's conduct in filing that petition. Moreover, the court failed to comment upon petitioner's misconduct in secreting the children from respondent for three days and in unilaterally restricting her visitation rights on several occasions. The failure to consider petitioner's misconduct lends credence to respondent's contention that Family Court improperly considered her conduct as a means of punishment.

If the only error were the failure to make necessary findings, ordinarily we would remit the matter for proper findings *(see, Giordano v Giordano, supra,* at 312). Because Family Court also improperly weighed the relevant factors in reaching its custody determination and because the record is adequate, we exercise our independent power to make the factual findings Family Court should have made *(see, Pawelski v Buchholtz,* 91 AD2d 1200).

We agree with Family Court that the parties are caring and loving parents and that petitioner's computer interests might have a detrimental impact upon his attention to the children. The court's finding that respondent's impending remarriage might have a similar effect is not supported by the evidence. Respondent testified that, if granted custody, she would avail herself of her employer's new program permitting her to work mornings, thereby allowing her to be available to the children in the afternoon and evenings. Further, respondent testified that, upon remarriage, she would stop working so that she would be available to care for the children. The record reveals that neither parent is unfit; that both parents are financially able to provide for the children; and that both parents have the ability to provide for the emotional and intellectual development of the children. Respondent takes the children to church; petitioner does not. We find that respondent demonstrated a greater ability to provide for the religious upbringing of the children. Both parties exercised primary physical custody of the children, and stability of prior custodial arrangements is not a weighty concern. Given the pre-school age of the children, their desires or preferences are not a factor in this case. The most telling distinction, however, is in the quality of the respective home environments. The uncontroverted record indicates that the children have their own bedroom, a decorated playroom and a fenced-in back yard with a swing set at respondent's home. Evidence portrayed petitioner's residence as unkempt, and the Law Guardian found the conditions there very disturbing. Notably, Family Court, in its order, directed petitioner to provide a bed for each child and to provide sufficient illumination in the living quarters and children's bedroom. We find respondent's home environment significantly superior to that of petitioner. Weighing all of the factors discussed above, we determine that an award of primary physical custody to respondent would serve the best interests of the children. Neither party has challenged Family Court's award of joint custody. Therefore, we modify the order to grant respondent's cross petition for primary physical custody, and we remit this matter to Oswego County Family Court for the fixing of an appropriate visitation schedule. (Appeal from Order of Oswego County Family Court, Elliott, J.—Custody.) Present—Denman, P. J., Green, Balio, Boehm and Davis, JJ.