■ NANCY MANNELLO, Appellant, v TOWN OF ULSTER, POST 1748, AMERICAN LEGION, INC., Respondent. [707 NYS2d 725] —Crew III, J. Appeals (1) from a judgment of the Supreme Court (Kavanagh, J.), entered January 21, 1999 in Ulster County, upon a verdict rendered in favor of plaintiff, and (2) from an order of said court, entered April 8, 1999 in Ulster County, which, *inter alia*, denied plaintiff's cross motion to set aside the verdict.

In June 1994 plaintiff, a member of defendant's Ladies' Auxiliary, was injured while attempting to light a gas grill on defendant's stove. As a consequence, in February 1995 plaintiff commenced this negligence action alleging that defendant failed to provide a safe stove, adequate warnings or appropriate supervision and instruction concerning the operation of the stove. Following a trial, the jury found plaintiff to be 80% at fault and defendant 20% at fault and awarded plaintiff $1,000 for her past medical expenses and $15,000 for past pain and suffering. No award was made for future medical expenses or future pain and suffering. On January 21, 1999, after deducting certain statutory expenses, judgment was entered in the amount of $6,228.78, from which plaintiff now appeals.

In February 1999 defendant moved for an order permitting deposit of the amount of the judgment with the County Clerk, and plaintiff cross-moved to set aside the verdict on the ground that Supreme Court (Bradley, J.) improperly restricted voir dire during the jury selection process. Plaintiff consented to the deposit of the amount of the judgment and Supreme Court denied her cross motion. Plaintiff also appeals from the order entered in that regard.

Initially, plaintiff contends that the jury's finding as to comparative negligence is against the weight of the evidence. We disagree. Recognizing that a determination of comparative

negligence is wholly within the province of the jury, such will not be set aside unless the evidence so preponderated in plaintiff's favor that the verdict could not have been reached upon any fair interpretation of the evidence (*see, e.g.*, *Coutrier v Haraden Motorcar Corp.*, 237 AD2d 774, 775-776). Additionally, great deference is accorded the interpretation of the evidence by the jury and, if sufficient evidence exists to support the verdict, it will be sustained even if other evidence in the record would support a contrary result (*see*, *Smith v Lebanon Val. Auto Racing*, 194 AD2d 946, 947).

Here, the record reflects that at the time of the accident, defendant's members were meeting to elect new officers. While the meeting was ongoing, members of the Ladies' Auxiliary were in the kitchen preparing hot dogs and hamburgers for consumption following the meeting. In order to accomplish that task, plaintiff undertook to light the gas grill on defendant's stove. The evidence was uncontroverted that plaintiff never had attempted to light the stove in question, nor did she have any experience in lighting any other gas stove or appliance. Furthermore, the record reflects that plaintiff had received no advice or instructions on lighting the stove's grill. In spite of the fact that there were numerous individuals on the premises who used the stove frequently, plaintiff sought no assistance from any of them. Rather, she turned on the main gas valve and attempted to light the grill with a match. When the match went out, plaintiff turned off the gas, struck another match, turned on the gas and again attempted to light the grill. When the second match was extinguished, plaintiff turned off the gas, lit a third match and again turned on the gas. When she attempted to again light the grill, there was an explosion and "blow back" by reason of which plaintiff sustained the injuries of which she complains. Finally, there was expert testimony that the explosion occurred as the result of all three burners on the stove having been turned on and a lighted match placed inside the stove where gas had accumulated due to the grill having been turned on and off without successful ignition, thus causing the "blow back".

While the jury could have concluded, as it obviously did, that defendant was negligent in not instructing plaintiff on the use of the stove or in failing to supervise such use, we are unable to conclude that apportionment of 80% fault to plaintiff could not have been reached upon any fair interpretation of the evidence. Plainly, the jury could have concluded that plaintiff, in attempting to light a stove with which she had absolutely no experience and in not seeking assistance after having unsuc-

cessfully attempted ignition on two prior occasions, was primarily at fault for the accident.

We likewise reject plaintiff's assertion that the award of damages deviated materially from reasonable compensation. Plaintiff's assertion is founded primarily upon the testimony of her physician, Rudolph Taddonio, who first saw plaintiff on July 27, 1994, nearly two months after the accident. In taking plaintiff's history, Taddonio was advised that as a result of a stove explosion, plaintiff was thrown across a room and into a kitchen door. Based upon that history and Taddonio's physical findings, he was of the opinion that plaintiff's complaints and the disorders that he found upon examination were caused by a hyperextension injury to plaintiff's neck. Ultimately, Taddonio performed fusion surgery on plaintiff's upper spine. Plaintiff claims that as a result of that surgery she suffers continued pain and disability and will do so in the future, and an award of $15,000, given these circumstances, deviates materially from reasonable compensation.

Defendant's medical expert, Ira Neustadt, a board-certified neurologist, was of the opinion that plaintiff's neck surgery was not necessitated by the accident, especially in light of the fact that plaintiff did not complain of neck pain when she initially was seen in the hospital emergency room. Neustadt explained that if plaintiff had sustained a hyperextension injury to her neck, as postulated by Taddonio, she would have experienced immediate, intense pain followed by muscle spasm and paresthesia. Contrary to Taddonio's opinion, Neustadt was of the view that plaintiff's neck condition was the result of longstanding and slowly developing osteophytic growths that preexisted her accident. Indeed, Taddonio acknowledged the presence of that condition but opined that the accident had either exacerbated the condition or made symptomatic a condition that was asymptomatic prior thereto. Obviously, the jury here was presented with conflicting medical testimony, which conflict was its to resolve (see, e.g., Noelle v Hofflich, 234 AD2d 655, 656). Assuming that the jury credited Neustadt's testimony, as it must have, then the verdict here cannot be said to deviate materially from reasonable compensation. We have considered plaintiff's remaining contentions and find them to be either without merit or unpreserved for our review.

Cardona, P. J., Carpinello, Graffeo and Mugglin, JJ., concur. Ordered that the judgment and order are affirmed, without costs.