■ JONATHAN M. LANDSMAN, Appellant, v VILLAGE OF HANCOCK et al., Respondents. [745 NYS2d 258] —Mugglin, J. Appeals (1) from a judgment of the Supreme Court (Hester, Jr., J.), entered May 23, 2001 in Delaware County, upon a verdict rendered in favor of defendants, and (2) from an order of said court, entered August 14, 2001 in Delaware County, which denied plaintiff's motion to, inter alia, vacate the judgment.

At approximately 10:45 P.M. on January 3, 1998, plaintiff was walking south on Read Street in the Village of Hancock, Delaware County. Immediately to his right was a grocery store parking lot. Plaintiff testified that when he reached the intersection of Read and East Front Streets, a Village of Hancock police car blocked his path. He therefore turned right and walked west on East Front Street, but then changed his mind and turned left, jaywalking across the street to the south side, where there is no sidewalk, turned left and walked east on East Front Street. Plaintiff testified that, in the meantime, the police car had not moved and, when he reached the side of the car, the officer who was riding on the passenger side rolled down the window and asked him if he was all right. Claiming that he responded in the affirmative, plaintiff continued to

walk on the south side of East Front Street, reaching the sidewalk. Plaintiff claimed that the police car then slowly rolled along beside him and the officer again asked "in a very nasty tone" if he lived in town, and plaintiff responded by indicating that he did own property in the locality. Plaintiff claimed that the uniformed officers then demanded identification and asked that he approach the car. Plaintiff contended that when he continued to walk, the police car suddenly accelerated, stopped a short distance in front of him at the curb, and the driver exited the car and quickly approached him, stopping his walk.

The officers, on the other hand, stated that they were parked in the grocery store parking lot when they observed plaintiff walking south on Read Street, making what they characterized as abrupt or very abrupt turns on East Front Street, to cross the road and to then go east on East Front Street. Claiming concern for plaintiff's safety, they approached him in their car and asked if he was all right. When plaintiff failed to respond, Officer James Picozzi observed that plaintiff's eyes were glassy and that "he appeared to be intoxicated or on some type of drug [and] disoriented." Officer Gary Resti claimed that plaintiff appeared to be "looking right through us." After a second inquiry into his well-being was met with silence, the officers pulled the patrol car to the curb and Resti exited the vehicle to approach plaintiff.

The testimony concerning what occurred on the sidewalk also is dissimilar. Plaintiff characterized the encounter as highly confrontational with Resti quickly walking toward him and loudly asking for identification and expressing dissatisfaction with plaintiff's lack of responses to that point. Plaintiff claimed that Picozzi tried to exit the vehicle and was blocked by the curb, but was partially out of the vehicle and that he held up his hand to signal him to stop. Plaintiff identified, himself as an attorney, but indicated an unwillingness to reveal his identity and apparently told the officer that the Court of Appeals has ruled that he did not have to do so. Plaintiff claimed that he specifically asked twice if he was free to go, but the first request was simply answered by another demand that he identify himself, and the second request was met with silence. Plaintiff demanded to know the officers' names and, after receiving that information, gave the officers his name and date of birth. Picozzi testified that he attempted to open the car door but was blocked by the curb, so he remained in the car. He denied being partially out of the car or holding up his hand to signal plaintiff to stop. He also testified that he was close enough to hear the conversation and told plaintiff that he

was "free to leave at any time." All parties apparently agree that, after plaintiff revealed his name and date of birth, the officers radioed in and received a routine computer check to insure that plaintiff was not reported as missing and was not wanted by any police agency. The encounter ended by Resti extending his hand and saying to plaintiff that "it was nice meeting you" or words to that effect. Plaintiff refused to shake the officer's hand and continued on his walk at 10:52 P.M.

This encounter is the basis for the suit commenced by plaintiff against Resti, Picozzi, the Village and various village and police officials. In his complaint, plaintiff alleged that defendants were liable to him for common-law assault, false imprisonment, state due process and equal protection violations, unreasonable seizure pursuant to the state constitution and a violation of 42 USC § 1983.

In May 2000, plaintiff moved for partial summary judgment on the issue of Resti's and Picozzi's liability on the unreasonable seizure and federal civil rights causes of action. Supreme Court (Monserrate, J.) denied this motion, finding questions of fact as to whether the officers' stop of plaintiff was reasonable. Subsequently, the court granted defendants' motion and ordered a bifurcated trial, severing the federal civil rights claim from the five state law claims. Following the close of proof in the liability phase of the state claims, questions were submitted to the jury concerning only whether either officer had falsely imprisoned plaintiff, whether either officer had seized plaintiff, and whether both officers had an objective credible reason to request information from plaintiff. The jury answered each question favorably to the defense. Thereafter, over plaintiff's objection, Supreme Court entered judgment in defendants' favor, dismissing the complaint in its entirety and awarding costs to defendants. Plaintiff's motion for postjudgment relief pursuant to CPLR 4404 (a) was denied. Plaintiff appeals from both the judgment dismissing his complaint and the order denying him postjudgment relief, which appeal brings up for review the various intermediate orders (see, CPLR 5501 [a]).

We first address plaintiff's argument that he was deprived of his federal rights under the 4th Amendment due to his unreasonable seizure by the police officers and, therefore, that he was erroneously denied partial summary judgment on his 42 USC § 1983 cause of action. "To prevail against a governmental entity or employee in a claim under that section, a plaintiff must demonstrate the existence of '(1) an official policy or custom that (2) causes [the plaintiff] to be subjected to (3) a

denial of a constitutional right' " (*Linen v County of Rensselaer*, 274 AD2d 911, 913, quoting *Howe v Village of Trumansburg*, 199 AD2d 749, 751, *lv denied* 83 NY2d 753). Under federal law, a police officer may approach an individual and initiate preliminary questioning without implicating the 4th Amendment (*see*, *Florida v Bostick*, 501 US 429, 434; *Brown v City of Oneonta*, 221 F3d 329, 340, *cert denied* 534 US 816). Such an encounter becomes a seizure only when the officer apprehends the citizen " 'by means of physical force or show of authority' " (*United States v Hooper*, 935 F2d 484, 491, *cert denied* 502 US 1015, quoting *Terry v Ohio*, 392 US 1, 19 n 16) and creates a detention from which a reasonable person would not feel free to leave (*see*, *California v Hodari D.*, 499 US 621, 627-628; *Immigration & Naturalization Serv. v Delgado*, 466 US 210, 215). Such inquiries are necessarily highly factual in nature (*see*, *United States v Lee*, 916 F2d 814, 819). Under the circumstances of this case, we agree with Supreme Court's conclusion that the reasonableness of the officers' contact with plaintiff presented questions of fact precluding summary judgment.

Plaintiff next argues that Supreme Court abused its discretion when it bifurcated his federal claim from the state claims and severed it for a separate trial. Plaintiff's main argument is that he was thereby prohibited from presenting his claims in their full context. As part of his federal civil rights cause of action, plaintiff alleged that the purportedly unconstitutional acts of the officers were caused by the Village's municipal custom or policy (*see*, *Monell v Department of Social Servs.*, 436 US 658). A necessary threshold predicate to such a claim is that the officers' actions were unconstitutional (*see*, *City of Los Angeles v Heller*, 475 US 796, 799). Thus, Supreme Court reasoned that bifurcation served two salutary purposes. First, in the event that a jury found no unconstitutional action by the officers, a trial of the *Monell* cause of action would be unnecessary. Second, possible prejudice to the individual officers who were defendants in the state action, where the Village's liability is vicarious only, would be avoided. Obviously, to prove a municipal policy and direct liability of the Village, plaintiff intended to introduce evidence of other alleged acts of police misconduct unrelated to his personal claim. " '[T]he decision to order a bifurcated trial rests with the sound discretion of the trial court' " (*Barron v Terry*, 268 AD2d 760, 761, quoting *Fetterman v Evans*, 204 AD2d 888, 889; *see*, CPLR 603, 4011). We discern no abuse of this discretion under these circumstances.

Next, plaintiff asserts that Supreme Court committed re-

versible error with several of its evidentiary rulings. First, because one of the officers initially thought plaintiff might be drunk and because both officers testified that they had never seen plaintiff prior to this occasion, plaintiff sought to call two witnesses who could testify to his sobriety immediately before and after the encounter with the police and who could testify to his habit of frequently walking in the village. In our view, both of these witnesses were properly excluded as their testimony is irrelevant to the issues being tried and their testimony concerns only collateral matters which were being offered solely for the purpose of impeaching the testimony of the officers (*see, People v Pavao*, 59 NY2d 282; *People v Brooks*, 210 AD2d 800, *lv denied* 85 NY2d 906).

Next, plaintiff claims that he was wrongly prohibited from fully testifying that he was motivated to bring this lawsuit because of alleged past instances of police misconduct in the village. He further argues that regardless of his motivation, past misconduct should be admissible as either a *Molineux* exception or as proof of a business practice. We discern no merit to these arguments and conclude that the proffered evidence was properly excluded because the highly prejudicial nature of such evidence far outweighs its probative value on these state claims (*cf., People v Ventimiglia*, 52 NY2d 350, 359-360; *People v Toland*, 284 AD2d 798, 804-805, *lv denied* 96 NY2d 942).

Plaintiff further argues that he should have been allowed to introduce evidence that, after the encounter, the officers went to the restaurant where plaintiff had dined prior to taking his walk. We agree with Supreme Court that such evidence is totally irrelevant. We further see as totally irrelevant plaintiff's proffered testimony that 27 days later, on two occasions, a police officer in the village parked a patrol car and walked in plaintiff's direction.

Plaintiff's last evidentiary complaint deals with the admissibility of his handwritten notes made in his car and later at his home after his encounter with the officers. Plaintiff asserts that they were admissible as past recollection recorded. We disagree. Plaintiff was capable of recalling and testifying about the events of the night of January 3, 1998 without difficulty. His notes therefore do not qualify for the past recollection recorded exception to the hearsay rule and were properly excluded (*see, People v Taylor*, 80 NY2d 1, 8).

We next turn to plaintiff's argument that, since the standards of what constitutes a seizure under state and federal law are different, the jury verdict did not determine his federal

claim and Supreme Court, therefore, erroneously dismissed it. There is no doubt that "seizure" is defined differently under New York and federal law (*see, People v Bora*, 83 NY2d 531, 534; *cf., People v Scott*, 79 NY2d 474; *People v Harris*, 77 NY2d 434; *People v P.J. Video*, 68 NY2d 296, *cert denied* 479 US 1091). However, plaintiff's argument that one can be seized within the meaning of the 4th Amendment of the US Constitution and yet not also be seized within the meaning of NY Constitution, article I, § 12 is dependent upon plaintiff's erroneous perception that the standard under the former is broader than the standard under the latter, when the reverse is in fact the case. As the Court of Appeals has stated, "the Federal Bill of Rights * * * establish[es] minimal standards for individual rights applicable throughout the Nation. The function of the comparable provisions of the State Constitution, if they are not to be considered purely redundant, is to *supplement* those rights to meet the needs and expectations of [New York] State" (*People ex rel. Arcara v Cloud Books*, 68 NY2d 553, 557 [emphasis supplied]). Under federal law, a seizure occurs " 'when the officer, by means of physical force *or show of authority*, has in some way restrained the liberty of a citizen' " (*California v Hodari D.*, 499 US 621, 625, *supra*, quoting *Terry v Ohio*, 392 US 1, 19 n 16, *supra* [emphasis in original]). In contrast, under the NY Constitution, it is "not required that an individual be physically restrained or submit to a show of authority" in order for it to be found that he or she was subjected to a seizure (*People v Bora, supra* at 534). Rather, it is sufficient that the individual be exposed to a mere "significant interruption [upon his or her] liberty of movement" (*id.* at 534; *see, People v De Bour*, 40 NY2d 210, 216). Here, since the jury decided that plaintiff was not seized by the officers within the meaning of New York law, it necessarily decided that he was not seized within the more narrow definition of a seizure under federal law. As plaintiff is collaterally estopped from litigating the federal claim, no liability can be ascribed to either the individual officers or the Village and its officials (*see, Curley v Village of Suffern*, 268 F3d 65, 71; *Linen v County of Rensselaer*, 274 AD2d 911, 913, *supra*). Dismissal of the federal civil rights cause of action was entirely appropriate.

Lastly, plaintiff argues that Supreme Court erred in denying his posttrial motion for judgment as a matter of law on his unlawful seizure claim under the NY Constitution. Plaintiff argues that, of the four levels of citizen/police encounters recognized in *People v De Bour* (*supra* at 222-223), he was subjected to level two and three interactions. We disagree. As he was "approached for an articulable reason and asked briefly

about his * * * identity, destination, or reason for being in the area," plaintiff's encounter with the officers was clearly a governmental intrusion of the mildest variety (*People v Hollman*, 79 NY2d 181, 191). The encounter lasted, at most, seven minutes and, according to the officers, was initiated by their concern for plaintiff's safety. The jury clearly accepted this testimony over that of plaintiff. Since neither officer's testimony was "incredible as a matter of law and without evidentiary value" (*People v Krzykowski*, 293 AD2d 877, 879), due deference must be afforded to the jury's credibility determinations and interpretation of the evidence (*see, Mannello v Town of Ulster, Post 1748, Am. Legion*, 272 AD2d 804, 805). Thus, denial of the motion was appropriate.

Mercure, J.P., Crew III, Spain and Rose, JJ., concur. Ordered that the judgment and order are affirmed, without costs.