# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**208**
**CAF 11-01578**
PRESENT: SCUDDER, P.J., CENTRA, PERADOTTO, LINDLEY, AND MARTOCHE, JJ.

---

IN THE MATTER OF WILLARD SAPERSTON,
PETITIONER-RESPONDENT-RESPONDENT,

V                                    MEMORANDUM AND ORDER

HEATHER HOLDAWAY,
RESPONDENT-PETITIONER-APPELLANT.

---

JENNIFER M. LORENZ, LANCASTER, FOR RESPONDENT-PETITIONER-APPELLANT.

CARNEY & GIALLANZA, BUFFALO (MARY G. CARNEY OF COUNSEL), FOR PETITIONER-RESPONDENT-RESPONDENT.

EMILIO COLAIACOVO, ATTORNEY FOR THE CHILD, BUFFALO, FOR WES H.

---

Appeal from an order of the Family Court, Erie County (Sharon M. LoVallo, A.J.), entered July 1, 2011 in a proceeding pursuant to Family Court Act article 6.  The order, inter alia, granted the parties joint custody of their child and designated petitioner-respondent the primary residential parent.

It is hereby ORDERED that the order so appealed from is modified on the law and the facts by awarding primary physical custody of the child to respondent-petitioner and as modified the order is affirmed without costs and the matter is remitted to Family Court, Erie County, for further proceedings in accordance with the following Memorandum: Respondent-petitioner mother appeals from an order that, inter alia, awarded the parties joint custody of their child and granted petitioner-respondent father primary physical custody of the child. We agree with the mother that Family Court's determination with respect to primary physical custody lacks a sound and substantial basis in the record (*see generally Sitts v Sitts*, 74 AD3d 1722, 1723, *lv dismissed* 15 NY3d 833, *lv denied* 18 NY3d 801; *Fox v Fox*, 177 AD2d 209, 211-212).  We therefore modify the order by awarding primary physical custody to the mother and remitting the matter to Family Court to fashion an appropriate visitation schedule.

We note at the outset that, inasmuch as this case involves an initial custody determination, it cannot properly be characterized as a relocation case to which the application of the factors set forth in *Matter of Tropea v Tropea* (87 NY2d 727, 740-741) need be strictly applied (*see Matter of Moore v Kazacos*, 89 AD3d 1546, 1546, *lv denied* 18 NY3d 806; *Matter of Baker v Spurgeon*, 85 AD3d 1494, 1496, *lv dismissed* 17 NY3d 897; *Matter of Schneider v Lascher*, 72 AD3d 1417,

1417, *lv denied* 15 NY3d 708). Although a court may consider the effect of a parent's relocation as part of a best interests analysis, relocation is but one factor among many in its custody determination (*see Verity v Verity*, 107 AD2d 1082, 1084, *affd* 65 NY2d 1002; *Matter of Torkildsen v Torkildsen*, 72 AD3d 1405, 1406; *Malcolm v Jurow-Malcolm*, 63 AD3d 1254, 1255-1256). Stated differently, "[i]n cases involving the geographic relocation of the custodial parent, as in all other custody proceedings, the primary focus of the court is the best interests of the child, not the mere fact of relocation" (*Matter of Donald C.O. v Carolyn D. v B.*, 224 AD2d 930, 930). Here, the mother's relocation to Brooklyn was seemingly the predominant factor upon which the court based its custody determination. Indeed, despite acknowledging that this case is not a " 'relocation case[],' " the court nonetheless proceeded to apply the *Tropea* factors, and concluded that the mother failed to prove that her relocation was in the child's best interests. We conclude that the court erred. Inasmuch as this case involves an initial custody determination, the court improperly required the mother to establish by a preponderance of the evidence that her move to Brooklyn was in the best interests of the child (*see Tropea*, 87 NY2d at 741). Rather, the relevant issue is whether it is in the best interests of the child to reside primarily with the mother or the father (*see generally Eschbach v Eschbach*, 56 NY2d 167, 172-174). We note in any event that the mother's "relocation is not a proper basis upon which to award primary physical custody to [the father] . . . inasmuch as the child[] will need to travel between the parties' two residences regardless of which parent is awarded primary physical custody" (*Sitts*, 74 AD3d at 1723).

In addition to placing undue emphasis on the mother's relocation, we conclude that the court's best interests determination is flawed and lacks a sound and substantial basis in the record (*see generally Matter of Moran v Cortez*, 85 AD3d 795, 796-797; *Matter of Michael P. v Judi P.*, 49 AD3d 1158, 1159). The court indicated that it considered the following factors in rendering its determination: (1) the continuity and stability of the existing custodial arrangement, including the relative fitness of the parents and the length of time the custodial arrangement has continued; (2) the quality of each parent's home environment; (3) the ability of each parent to provide for the child's emotional and intellectual development; and (4) the financial status and ability of each parent to provide for the child (*see Fox*, 177 AD2d at 210).

With respect to the first factor, it is undisputed that, prior to the commencement of this proceeding, when the child was approximately 14 months old, the mother was the child's primary caregiver. The father testified that, from the child's birth until the commencement of this proceeding, the mother was the primary caretaker of the child, took the child to doctor appointments, and provided health insurance for the child. There are no indications in the record that the mother is unfit to care for the child and, indeed, the court specifically found that there were no issues with respect to the mother's ability to care for the child. Significantly, the father testified that the mother "taught [him] . . . almost everything [he] know[s] about how to care for [the child]." We thus conclude that the first factor is in

the mother's favor.

As for the second factor, i.e., the quality of each parent's home environment, the record reflects that both parents' homes are satisfactory to raise a child, and thus this factor does not favor either party. The father resides in a four-bedroom farmhouse with his parents in a rural community in Western New York, while the mother lives in an apartment with 2½ bedrooms in the Park Slope neighborhood of Brooklyn. With respect to the third factor, we conclude that the mother demonstrated the greater ability to provide for the child's intellectual and emotional development. The mother is 35 years old, holds a master's degree in mental health counseling, and is a New York State licensed mental health counselor. The father is 26 years old with a bachelor's degree in the entertainment business. The father admitted that, when the child was a few months old, he became so frustrated with the child's crying that he "felt like throwing [the child] against the wall." In addition, the father testified that, when the child was born, he did not know how to care for an infant, nor did he take a parenting course until after he filed the custody petition, when the child was 14 months old. Prior to commencing this proceeding, the father lived in an apartment that, by his own admission, was inadequate for a child. The father did not make his apartment "baby ready" or seek alternate housing until the child was 14 months old. The father also testified that he voluntarily ceased all contact with the child during the four months preceding the commencement of this proceeding as a result of an argument he had with the mother.

With respect to the fourth factor, i.e., the financial status and ability of each parent to provide for the child, the court concluded that such factor weighs in favor of the father. We disagree, and conclude that the court's determination in that regard is unsupported by the record. The evidence establishes that the mother is employed by the University of Pittsburgh Medical Center and earns a salary of approximately $69,000. Although the mother lives in Brooklyn, she owns a home in Western New York and applies the rental income from that home to her lease in Brooklyn. By contrast, the father works for his family's real estate business as an office manager and real estate agent, and he testified that he earns approximately $10,000 a year. The father acknowledged that his parents "subsidize [his] existence," and that they "pay pretty much [his] way through life." The father also admitted that, without the financial assistance of his parents, he would struggle to pay child care and would have difficulty supporting himself and the child. Although the father and the Attorney for the Child emphasized the father's alleged "earning capacity," we conclude on the record before us that the father's earning potential is entirely speculative. At the time of trial, the father had been working as a real estate agent for more than three years, yet he estimated that his income was $10,000 a year. The father testified that he had three multimillion dollar commercial listings that, if sold, would yield commissions of $150,000, $75,000 and $100,000, respectively. The father admitted, however, that two of those properties had been on the market for approximately a year. To the extent that the court's findings concerning the father's financial

stability and earning capacity are based on the financial status of the father's parents, we note that the record contains no proof of the financial status of the paternal grandparents.

We further agree with the mother that the court erred in admitting the father's journal in evidence. There is no question that the journal constitutes hearsay, i.e., "out-of-court statements offered for the truth of the matter asserted" (*Howard v Codick*, 55 AD3d 1376, 1377), and the father failed to establish that the journal fell within any recognized exception to the hearsay rule. In order to admit a document as a past recollection recorded (*see generally* Prince, Richardson on Evidence § 6-220 [Farrell 11th ed]), the proponent must establish "that the document relates to matters the witness observed, the matters were fairly fresh when recorded or adopted, the witness testifies that the document accurately represented his or her recollection and knowledge when it was made and the witness is presently unable to recall the facts of the matter" (*Morse v Colombo*, 31 AD3d 916, 917). Here, the father did not testify that he could not recall the events that he recorded in the journal (*see Landsman v Village of Hancock*, 296 AD2d 728, 732, *appeal dismissed* 99 NY2d 529). Further, although the father testified that he made the entries contemporaneously with the events contained therein, a review of the journal reflects that the father later added commentary and/or observations on the events discussed. In addition, the journal contains alleged re-creations of texts and e-mails between the parties, which were not produced. Those portions of the journal violate the best evidence rule, which "requires the production of an original writing where its contents are in dispute and sought to be proven" (*Kliamovich v Kliamovich*, 85 AD3d 867, 869). We thus conclude that, while counsel for the father could have utilized the journal to refresh the father's recollection as to specific dates or events, the court erred in allowing the admission of the entire document in evidence (*see Matter of Smith v Miller*, 4 AD3d 697, 697-698). Finally, we reject the contention of the father and the Attorney for the Child that any error in the admission of the journal is harmless. The journal contains numerous prejudicial "notes" concerning the father's impressions of the mother and justifications for his conduct, and the court referred to the journal in its decision.

All concur except CENTRA and MARTOCHE, JJ., who dissent and vote to affirm in the following Memorandum: We respectfully dissent. "An award of custody is a matter that rests within the sound discretion of the hearing court" (*Matter of Donald C.O. v Carolyn D. v B.*, 224 AD2d 930, 930). Because "Family Court's determination in a custody dispute is based upon a first-hand assessment of the parties, as well as their credibility, character and temperament, and the [court's] determinations are to be accorded great weight on appeal, such a determination should not be disturbed unless it lacks a sound and substantial basis in the record" (*Matter of Demeter v Alayon*, 90 AD3d 1045, 1045; *see Matter of Sweetser v Willis*, 91 AD3d 963, 963-964). Contrary to the majority's determination, we conclude that the court's decision to award primary physical custody to petitioner-respondent father has a sound and substantial basis in the record and should not be disturbed.

In this initial custody determination, "the overriding priority is the best interests of the child" (*Matter of Lynch v Gillogly*, 82 AD3d 1529, 1530; *see Donald C.O.*, 224 AD2d at 930). While a strict application of the relocation factors set forth in *Matter of Tropea v Tropea* (87 NY2d 727, 740-741) was not required, nevertheless respondent-petitioner "mother's relocation was 'a very important factor' among all factors to be considered in making a best interests determination, as was the effect of the move on the child's relationship with the father if the mother were awarded custody" (*Matter of Sullivan v Sullivan*, 90 AD3d 1172, 1173; *see Matter of Schneider v Lascher*, 72 AD3d 1417, 1417, *lv denied* 15 NY3d 708).

Here, the record establishes that both parents are loving and fit, able to care for the child and capable of providing financial support and a suitable and stable home for the child. The record supports the court's finding, however, that the mother is "distrustful, somewhat [overreactive] and chooses to dictate rather than cooperate and communicate." For example, the mother did not notify the father of her planned move and did not provide a forwarding address. Additionally, after the father learned of the relocation, he brought an order to show cause to have the child returned, which was granted, and the mother avoided service of the order. The court also found that "[v]arious allegations in [the m]other's petition proved to be unfounded, exaggerated or without merit."

Each parent has bonded with the child and is capable of fostering his intellectual and emotional development. Although the mother was the child's primary caretaker during the child's first year, the father has the advantage of an extended family support network in Western New York, and the child would have increased access to his extended family if he resides with the father (*see Matter of Torkildsen v Torkildsen*, 72 AD3d 1405, 1407). The relevant factors do not weigh significantly on the side of either party. Thus, "[a]ccording the appropriate great deference to the court's opportunity to hear the testimony and assess the credibility of witnesses, we find a sound and substantial basis for its conclusions in this record . . . and conclude that the custody award in this difficult case was based upon careful consideration of the appropriate factors and the child's best interests" (*Schneider*, 72 AD3d at 1419 [internal quotation marks omitted]). Finally, contrary to the view of the majority, we conclude that any error in the admission of the father's journal in evidence is harmless inasmuch as the father testified and the admissible evidence at the hearing, without consideration of the father's journal, supports the court's determination (*see Matter of Matthews v Matthews*, 72 AD3d 1631, 1632, *lv denied* 15 NY3d 704; *Matter of Garrett D. v Kevin L.*, 56 AD3d 1183, 1183-1184, *lv denied* 12 NY3d 702). We would therefore affirm the order.

Entered: March 23, 2012                          Frances E. Cafarell
                                                 Clerk of the Court