# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**96**
**CAF 12-00768**
PRESENT: SCUDDER, P.J., FAHEY, LINDLEY, VALENTINO, AND MARTOCHE, JJ.

---

IN THE MATTER OF PATRICK A. HOWELL,
PETITIONER-RESPONDENT,

V                                                   MEMORANDUM AND ORDER

FAATIMAH A. LOVELL, RESPONDENT-APPELLANT.

---

LEGAL ASSISTANCE OF WESTERN N.Y. INC., OLEAN (STEVEN A. LANZA OF COUNSEL), FOR RESPONDENT-APPELLANT.

WAGNER & HART, LLP, OLEAN (JANINE FODOR OF COUNSEL), FOR PETITIONER-RESPONDENT.

SCHAVON R. MORGAN, ATTORNEY FOR THE CHILD, MACHIAS, FOR BIANCA J.H.

---

Appeal from an order of the Family Court, Cattaraugus County (Michael L. Nenno, J.), entered February 22, 2012 in a proceeding pursuant to Family Court Act article 6. The order, inter alia, transferred primary physical placement of the parties' child to petitioner.

It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

Memorandum: Respondent mother appeals from an order that, inter alia, transferred primary physical placement of the parties' child to petitioner father. Pursuant to an order entered on the consent of the parties in August 2011 (2011 order), the mother was awarded primary physical placement of the child. The father was awarded liberal visitation that included, in odd-numbered years, "Christmas/Winter Break that said child has from school, or if said child is not in school for a period of at least two weeks at Christmas time." The mother, who had relocated to Virginia, was responsible for all transportation to and from visitation with the father in New York. It is undisputed that the mother did not transport the child for the Christmas 2011 visitation on or before Christmas 2011. The father thus filed the instant petition alleging that the mother had violated the 2011 order. We conclude that Family Court properly granted the petition and transferred primary physical placement of the child to the father.

Contrary to the mother's contention, the father established by clear and convincing evidence that "a lawful court order clearly expressing an unequivocal mandate was in effect, that the [mother] had

actual knowledge of its terms, and that the violation . . . defeated, impaired, impeded, or prejudiced the rights of [the father]" (*Manning v Manning*, 82 AD3d 1057, 1058; *see Matter of Formosa v Litt*, 91 AD3d 644, 644-645; *Matter of Joseph YY. v Terri YY.*, 75 AD3d 863, 867; *Matter of Petkovsek v Snyder* [appeal No. 2], 251 AD2d 1085, 1085). Although the 2011 order did not specify the date upon which the father was to assume visitation, the mother conceded that she understood that the order mandated that his visitation occur on Christmas Day. Indeed, the record establishes that the mother had initially arranged to transfer the child to the paternal grandmother in New York on Christmas Eve. The mother testified, however, that the father had agreed, at the mother's request, to postpone visitation until the "beginning" of January because of medical issues involving the mother. The father denied that there was such an agreement and, notably, the paternal grandmother proceeded to the transfer location on Christmas Eve with the assumption that visitation was to occur. The court determined that the mother's testimony related to the purported agreement was not credible and, inasmuch as we defer to "the court's firsthand assessment of the character and credibility of the parties" (*Matter of Thayer v Thayer*, 67 AD3d 1358, 1359; *see Matter of Tarrant v Ostrowski*, 96 AD3d 1580, 1580-1581, *lv denied* ___ NY3d ___ [Jan. 8, 2013]; *Matter of Nicole J.R. v Jason M.R.*, 81 AD3d 1450, 1451, *lv denied* 17 NY3d 701), we will not disturb that determination.

The mother correctly contends that the court did not specifically address any other factors related to the child's best interests before transferring primary physical placement of the child to the father. That omission, however, does not warrant reversal. "Our authority in determinations of custody is as broad as that of Family Court . . . and where, as here, the record is sufficient for this Court to make a best interests determination . . . , we will do so in the interests of judicial economy and the well-being of the child" (*Matter of Bryan K.B. v Destiny S.B.*, 43 AD3d 1448, 1450; *see e.g. Matter of Butler v Ewers*, 78 AD3d 1667, 1667; *Matter of Brian C.*, 32 AD3d 1224, 1225, *lv denied* 7 NY3d 717; *see generally Matter of Louise E. S. v W. Stephen S.*, 64 NY2d 946, 947).

We conclude that it is in the child's best interests for the father to have primary physical placement. It is undisputed that "defiance of a court order is but one factor to be considered when determining the relative fitness of the parties and what custody arrangement is in the child's best interest[s]" (*Wodka v Wodka*, 168 AD2d 1000, 1001; *see Tarrant*, 96 AD3d at 1582; *see generally Friederwitzer v Friederwitzer*, 55 NY2d 89, 94). "It is well settled, however, that [a] concerted effort by one parent to interfere with the other parent's contact with the child is so inimical to the best interests of the child . . . as to, per se, raise a strong probability that [the interfering parent] is unfit to act as custodial parent" (*Matter of Marino v Marino*, 90 AD3d 1694, 1695 [internal quotation marks omitted]; *see Matter of Howden v Keeler*, 85 AD3d 1561, 1562; *Matter of Amanda B. v Anthony B.*, 13 AD3d 1126, 1127). Here, the father established that the mother had not only violated the visitation provisions of the 2011 order, but also had violated the

visitation provisions of an earlier order.  At the time she refused to transport the child for the Christmas 2011 visitation, there was in effect an order adjourning the matter concerning the earlier violation in contemplation of dismissal.  Furthermore, the father submitted evidence that the mother had indicated that she did not care what the court directed her to do.  In our view, the mother's repeated violations of court orders and her interference with the father's visitation have rendered her unfit to act as a custodial parent.

Even assuming, arguendo, that the repeated interference with the father's visitation did not render the mother unfit to act as a custodial parent, we would nevertheless conclude that it is in the child's best interests to reside with the father.  In both New York and Virginia, the child will be near extended family, although we note that in New York, the child will reside with her two half-siblings. The Court of Appeals has recognized that "it is often in the child's best interests to continue to live with his [or her] siblings.  While this . . . is not an absolute, the stability and companionship to be gained from keeping the children together is an important factor for the court to consider" (*Eschbach v Eschbach*, 56 NY2d 167, 173; *see Fox v Fox*, 177 AD2d 209, 210).  Both parents are employed and have suitable residences, and the father and his girlfriend have a long-term, stable relationship.  Although the mother has been the primary caretaker for most of the child's life, the child is comfortable in both homes.  Finally, the evidence at the hearing established that the father would be better able to foster the child's relationship with the noncustodial parent.  We thus conclude that it is in the child's best interests for the father to have primary physical placement.

Entered:  February 8, 2013

Frances E. Cafarell
Clerk of the Court