Matter of Wojciulewicz v McCauley (2018 NY Slip Op 07559)





Matter of Wojciulewicz v McCauley


2018 NY Slip Op 07559


Decided on November 9, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 9, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, DEJOSEPH, TROUTMAN, AND WINSLOW, JJ.


952 CAF 17-00500

[*1]IN THE MATTER OF MALGORZATA ELZBIETA WOJCIULEWICZ, PETITIONER-RESPONDENT,
v
SHAWN MCCAULEY, RESPONDENT-APPELLANT. 






D.J. & J.A. CIRANDO, ESQS., SYRACUSE (ELIZABETH deV. MOELLER OF COUNSEL), FOR RESPONDENT-APPELLANT.
FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (DANIELLE K. BLACKABY OF COUNSEL), FOR PETITIONER-RESPONDENT. 
ANDREW S. GREENBERG, SYRACUSE, ATTORNEY FOR THE CHILD.
TIMOTHY A. ROULAN, SYRACUSE, ATTORNEY FOR THE CHILDREN. 


 Appeal from an order of the Family Court, Onondaga County (William W. Rose, R.), entered February 9, 2017 in a proceeding pursuant to Family Court Act article 6. The order, among other things, awarded petitioner primary legal and physical custody of the subject children. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: In this proceeding pursuant to Family Court Act article 6, respondent father appeals from an order that, inter alia, awarded petitioner mother primary legal and physical custody of the three subject children with specified visitation to the father. Although we agree with the father that Family Court failed to set forth the "facts it deem[ed] essential" for its custody determination (CPLR 4213 [b]; see Matter of Graci v Graci, 187 AD2d 970, 971 [4th Dept 1992]), the record is sufficient for us to make our own factual findings "in the interests of judicial economy and the well-being of the child[ren]" (Matter of Brandon v King, 137 AD3d 1727, 1727-1728 [4th Dept 2016]; see generally Matter of Howell v Lovell, 103 AD3d 1229, 1231 [4th Dept 2013]; Matter of Bryan K.B. v Destiny S.B., 43 AD3d 1448, 1450 [4th Dept 2007]).
We conclude that the court's determination is supported by a sound and substantial basis in the record (see generally Matter of Burns v Herrod, 132 AD3d 1336, 1336 [4th Dept 2015]). In making a custody determination, "numerous factors are to be considered, including the continuity and stability of the existing custodial arrangement, the quality of the child's home environment and that of the parent seeking custody, the ability of each parent to provide for the child's emotional and intellectual development, the financial status and ability of each parent to provide for the child, and the individual needs and expressed desires of the child" (Matter of Caughill v Caughill, 124 AD3d 1345, 1346 [4th Dept 2015] [internal quotation marks omitted]; see Bryan K.B., 43 AD3d at 1450).
Here, while the parties lived together, the mother was the primary caretaker and means of emotional and financial support for the children. After the parties separated, the father began to play a larger role in the children's lives. The mother has been a victim of domestic violence, first with the father when they resided together, and then with an abusive live-in boyfriend with whom she had other children. The mother ended the relationship with that boyfriend after she [*2]determined that the relationship was not in the best interests of either herself or the children, and she now lives in a three-bedroom townhouse with the children. The father has made attempts to improve the quality of the children's home environment in the long term by attending college and working part-time, which required enrolling the children in an after-school program and reducing the amount of time that he could spend at home with the children. The father has resided in the same home and school district for twelve years. Thus, both parents have worked to overcome challenges in providing stable home environments for the children.
Although each parent is now able to offer a stable home environment for the children, we conclude that the mother is better suited to provide for the children's emotional development inasmuch as the record establishes that she has a history of looking after their emotional needs, and she demonstrated a commitment to addressing their mental health by enrolling them in therapy. Both parents are supportive of the children's intellectual development and are dedicated to involvement in their schooling, and both parents are on equal footing financially, supplementing work income with public assistance.
There are two critical factors that weigh in favor of the mother: the father's use of excessive punishment, including excessive corporal punishment, and his failure to foster the children's relationship with the mother. The record reflects multiple instances of excessive punishment from the father, the most serious of which involved striking one of the children multiple times with a belt. After the incident, that child ran away from the father's home. Since that time, the child has lived with the mother and refused to see the father. The beating left scars on the child, and the father has subsequently failed to attempt to maintain any contact with the child. Additionally, the father made a concerted effort to interfere with contact between the children and the mother when the children were in his custody, as well as to interfere with contact between the children in his custody and their siblings. The record establishes that, for a period of six months, the mother was only able to see two of the children if she went to their school and saw them during lunch and the father prevented phone contact between the mother and the children. It is well settled that "[a] concerted effort by one parent to interfere with the other parent's contact with the child[ren] is so inimical to the best interests of the child[ren] . . . as to, per se, raise a strong probability that the [interfering parent] is unfit to act as a custodial parent" (Matter of Marino v Marino, 90 AD3d 1694, 1695 [4th Dept 2011] [internal quotation marks omitted]). Moreover, the record establishes that all three children have not spent any time together in several years. The mother offers a home environment that is loving and nurturing, while the father's home is an environment of fear. We thus conclude that it is in the children's best interests for the mother to have primary physical custody with visitation to the father.
Contrary to the father's contention, where, as here, the court is making an initial custody determination, "relocation is but one factor among many' to be considered by [the] court" (Matter of Sorrentino v Keating, 159 AD3d 1505, 1507 [4th Dept 2018]; see Matter of Saperston v Holdaway, 93 AD3d 1271, 1272 [4th Dept 2012], appeal dismissed 19 NY3d 887 [2012], 20 NY3d 1052 [2013]), and the factors set forth in Matter of Tropea v Tropea (87 NY2d 727, 740-741 [1996]) need not be strictly applied (see Saperston, 93 AD3d at 1272).
Finally, we note that the contention of the Attorney for the Child representing the oldest child that the court erred in ordering unsupervised visitation with the father is not properly before us because the Attorney for the Child did not appeal from the court's order (see generally Matter of Amollyah B. [Tiffany R.], 161 AD3d 1558, 1558 [4th Dept 2018]).
Entered: November 9, 2018
Mark W. Bennett
Clerk of the Court