Matter of Aden HH. v Charish GG. (2024 NY Slip Op 01846)

Matter of Aden HH. v Charish GG.

2024 NY Slip Op 01846

Decided on April 4, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 4, 2024

536095
[*1]In the Matter of Aden HH., Appellant,
v
Charish GG., Respondent. (And Two Other Related Proceedings.)

Calendar Date:February 22, 2024

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher and McShan, JJ.

Mary Jane Murphy, Binghamton, for appellant.
The Lama Law Firm, LLP, Ithaca (Ciano J. Lama of counsel), for respondent.
Lisa K. Miller, McGraw, attorney for the child.

McShan, J.
Appeal from an order of the Family Court of Tompkins County (Joseph R. Cassidy, J.), entered April 15, 2022, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of the subject child (born in 2017). After the parties first met in California, they later resided together in the City of Ithaca, Tompkins County, from 2016 until October 2020. Following a dispute between the parties, the mother absconded with the child to California in October 2020. Thereafter, the mother filed a family offense petition pursuant to Family Ct Act article 8 alleging that the father had committed several family offenses against her and, that same day, the father filed a custody petition seeking temporary sole legal custody and primary placement of the subject child. Family Court (Miller, J.) denied the father's petition pending the outcome of an investigation by the Department of Social Services but ordered that the child not be removed from New York. However, the mother, having already left the state, did not return with the child and, following a hearing in November 2020, Family Court (Cassidy, J.) permitted her to remain in California during the pendency of the proceedings.[FN1] Subsequently, in July 2021, the mother filed her own petition seeking sole custody of the subject child. Following a fact-finding hearing on the three petitions, Family Court dismissed the mother's family offense petition and granted the parties joint legal custody of the subject child with the mother having primary physical placement. In doing so, the court granted the mother's request to permanently relocate to California with the child and provided the father with specified parenting time, which included, among other things, one weekend a month with the child in California, a choice of spring or winter break during the child's school year and, beginning in 2023, 40 days during the child's summer break.[FN2] The father appeals.[FN3]
Initially, the father's contention that Family Court applied the wrong standard in assessing the parties' competing custody petitions is without merit. The clear import of the mother's petition seeking custody, as well as the testimony at the hearing, was a request for permission to relocate. Further, although Family Court recited the relocation factors set forth in Matter of Tropea v Tropea (87 NY2d 727 [1996]), strict application of those factors was not necessary as the court was faced with an initial custody determination (see Daryl N. v Amy O., 222 AD3d 1054, 1055 [3d Dept 2023]; Matter of O'Hara v DeMarsh, 161 AD3d 1271, 1272 [3d Dept 2018]; Matter of Saperston v Holdaway, 93 AD3d 1271, 1272 [4th Dept 2012], appeals dismissed 19 NY3d 887 [2012], 20 NY3d 1052 [2013]). To this end, "relocation is but one factor among many [to be considered] in its custody determination" (Matter of Saperston [*2]v Holdaway, 93 AD3d at 1272; see Matter of Vidal v Taneja, 218 AD3d 594, 595 [2d Dept 2023]). Said differently, that determination and the concomitant "relocation request must be considered on [their] own merits with due consideration of all the relevant facts and circumstances and with predominant emphasis being placed on what outcome is most likely to serve the best interests of the child" (Rizea v Rizea, 218 AD3d 807, 809 [2d Dept 2023] [internal quotation marks and citation omitted]).
Under the circumstances presented, the determination as to the best interests of the child entails consideration of a host of factors, including the traditional concerns such as "the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Patricia RR. v Daniel SS., 172 AD3d 1471, 1472 [3d Dept 2019] [internal quotation marks and citation omitted]), as well as those factors pertinent to a parent's desire to relocate, including the quality of the relationship between each parent and the child, the potential economic, emotional and education benefits of the move, and any potential detriment to the noncustodial parent's relationship with the child and the extent that the relationship can be preserved through a suitable parenting time arrangement (see Matter of Brian VV. v Heather WW., 218 AD3d 860, 861 [3d Dept 2023]; Matter of Eldad LL. v Dannai MM., 155 AD3d 1336, 1339 [3d Dept 2017]). As Family Court maintains the superior position with respect to the ability to evaluate witness credibility, our review of a custody determination pays deference to the court's factual findings, and we "only assess whether its determination is supported by a sound and substantial basis in the record" (Matter of David JJ. v Verna-Lee KK., 207 AD3d 841, 843 [3d Dept 2022] [internal quotation marks and citations omitted]).
The record before us reveals that the parties had a tumultuous relationship from the time that the mother relocated to New York with the father, and it became more contentious after the birth of the child. The mother testified to the father's unstable behavior in the home, which was precipitated by his substance abuse that persisted until the time that the mother absconded. According to the mother, the father frequently left illicit substances around the residence in places that were accessible to the child and her half sibling. She further noted that indirect exchanges of those substances between the father and various unnamed individuals was commonplace. As a result of the father's binging on illicit substances and the ensuing days of recovery, the mother would frequently be left as the sole caretaker for their child and her half sibling. The mother also testified [*3]that the father exhibited abusive and hostile behavior toward her, as he would often threaten to take custody of the child through litigation, remove the mother from the home, and threaten to engage in self-harm. By his own account, the father conceded that he had substance abuse issues after the child was born.[FN4] However, to the extent that he suggested that such behavior ceased in 2018 or was overstated, Family Court credited the mother's account that the behavior persisted beyond that time, which was corroborated by text messages between the parties and photographic proof of the residence.[FN5] Therefore, we find that the court's determination that the home environment was chaotic and unstable while the mother and child resided with the father has a sound and substantial basis in the record (see Matter of Adam OO. v Jessica QQ., 176 AD3d 1418, 1420 [3d Dept 2019]; see also Matter of William V. v Bridgett W., 182 AD3d 636, 639 [3d Dept 2020]).
The mother also testified that after initially relocating to New York, she had no support system beyond the father and his family. To that end, her return to California was precipitated by the presence of the maternal grandfather, the mother's eldest daughter from another relationship and other extended family. Members of the extended family were employed in the school district that the child would attend and were available to help in caring for the child. Contrasted with the credited testimony concerning the instability of the father's residence in New York, we find that Family Court's determination that relocation would provide a better environment is adequately supported (see Matter of Martinez v Driscoll, 209 AD3d 653, 655 [2d Dept 2022], lvs denied 39 NY3d 907 [2023], 39 NY3d 907 [2023]; see also Matter of Rebekah R. v Richard R., 176 AD3d 1340, 1342 [3d Dept 2019]).
We are mindful to emphasize that we do not condone the mother's conduct in relocating with the child without notice and engaging in self-help (see generally Matter of Jarvis v Lashley, 169 AD3d 1043, 1044 [2d Dept 2019]; Matter of Goodman v Jones, 146 AD3d 884, 885 [2d Dept 2017]). Such actions clearly were suggestive of her reluctance to foster a meaningful relationship between the child and the father and, regardless of the purported justification pertaining to the deterioration of her own relationship with the father and her concerns about the environment that the child was living in, doing so was improper. However, the mother's account, as credited by Family Court, raised significant concerns about the safety of the home environment and the father's ongoing substance abuse issues, which clearly motivated her actions. On this point, we note that, "although the unilateral removal of the child[ ] from the jurisdiction is a factor for the court's consideration, an award of custody must be based on the best interests of the child[ ] and not a desire to punish a recalcitrant parent" (Matter of Baxter v Borden, 122 AD3d 1417, 1418 [4th Dept 2014[*4]] [internal quotation marks, brackets, ellipsis and citations omitted], lv denied 24 NY3d 915 [2015]; accord Matter of Moredock v Conti, 130 AD3d 1472, 1473 [4th Dept 2015]). Moreover, as noted by Family Court, the parties demonstrated an improved ability to coparent together toward the latter stages of the proceeding, establishing the mother's willingness to promote the relationship following her move. Indeed, the record reflects that the mother was willing to facilitate substantial visitation with the father if Family Court could ensure the child's safety. The record also firmly supports that the mother had been the primary caretaker for most of the child's life prior to relocation and that role had obviously continued since she had moved to California (see Matter of Vidal v Taneja, 218 AD3d at 595). Finally, while Family Court did not appear to place a strong emphasis on the child's relationship with her half sibling in New York, that is but one factor in the analysis and we note that the father has parental time with that child for only half of each month (see Matter of Moredock v Conti, 130 AD3d at 1473). To this end, the lengthy summer visitation and holiday schedule, together with the frequent remote visitation, are sufficient to maintain the relationship as the children grow older.[FN6]
All told, we have no doubt that both parents love the child and are willing providers. Moreover, despite some reservation, we accept Family Court's determination that there are no ongoing concerns for the child's safety while the father exercises his parenting time, particularly with respect to his past substance abuse. However, on balance, and paying due consideration to the totality of the record, we discern no compelling justification to disturb Family Court's carefully considered custodial determination awarding the parties joint custody and permitting the mother to relocate (see Matter of Faea OO. v Isaiah PP., 220 AD3d 1132, 1135 [3d Dept 2023], lv denied 41 NY3d 901 [2024]; Matter of Anthony F. v Kayla E., 191 AD3d 1108, 1110-1111 [3d Dept 2021], lv denied 37 NY3d 901 [2021]; Matter of Hall v Hall, 118 AD3d 879, 882 [2d Dept 2014]; Matter of Shirley v Shirley, 101 AD3d 1391, 1393 [3d Dept 2012]; Malcolm v Jurow-Malcolm, 63 AD3d 1254, 1256-1257 [3d Dept 2009]; compare Matter of Jarvis v Lashley, 169 AD3d at 1044; Matter of Dunaway v Espinoza, 23 AD3d 928, 929 [3d Dept 2005]).
That being said, to the extent that the father now seeks increased parenting time with the child, our review of the record satisfies us that such provisions require modification and we may exercise our independent power to do so (see Jeffrey P. v Alyssa P., 202 AD3d 1409, 1412 [3d Dept 2022]; cf. Matter of Daryl N. v Amy O., 222 AD3d at 1057; Matter of Eldad LL. v Dannai MM., 155 AD3d at 1343). To this end, when considering the appropriate amount of parenting time in situations that involve the need for lengthy travel, Family Court should endeavor to provide as much parenting time [*5]to the noncustodial parent as possible while considering the best interests of the child (see Matter of Adam OO. v Jessica QQ., 176 AD3d at 1420; cf. Matter of Yu Chao Tan v Hong Shan Kuang, 136 AD3d 933, 935 [2d Dept 2016]; Lecaros v Lecaros, 127 AD3d 1037, 1038 [2d Dept 2015]). Assessing the allotment of parenting time in totality, we deem it appropriate to provide the father with five additional weekdays of parenting time in California bimonthly. The father's parenting time will remain subject to the pick-up and drop-off times articulated in Family Court's order.[FN7] Further, considering the disparity in parenting time between the parties on account of the relocation to California, we further expand the father's summer parenting time to include seven days in addition to the 40 days he is already provided in the current order (totaling 47 days). The father may be permitted to exercise his summer parenting time consecutively or as the parties may otherwise agree, but shall return the child to California no later than five days prior to the beginning of the school year. Finally, we find that the cap for costs to be borne by the mother relative to the father's and the child's travel is insufficiently supported by the record. Accordingly, we remand for a determination as to the appropriate amount that the parties should respectively contribute to travel costs associated with parenting time that better reflects the parties' financial circumstances (compare Matter of Faea OO. v Isaiah PP., 220 AD3d at 1135; see generally Matter of Daryl N. v Amy O., 222 AD3d at 1057).
Aarons, J.P., Pritzker, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the order is modified, on the law and the facts, without costs, by modifying petitioner's parenting time in accordance with this Court's decision; matter remitted to the Family Court of Tompkins County for a determination as to the allocation of the parties' financial responsibility for travel costs associated with petitioner's parenting time; and, as so modified, affirmed.

Footnotes

Footnote 1: Shortly after arriving in California, the mother obtained an order of protection against the father. Thereafter, Family Court conferred with the California Superior Court, Yuba County and, for purposes of the Uniform Child Custody Jurisdiction and Enforcement Act (see Domestic Relations Law art 5-A), New York was determined to be the child's "home state."

Footnote 2: The father was allotted three weeks of parenting time for the summer immediately following Family Court's order.

Footnote 3: During the proceedings, the attorney for the child supported the father's petition for custody. However, on appeal, the attorney for the child, noting that she has met with the child on three separate occasions, does not take a position on the aspect of the decision granting joint custody, but advocates in favor of affirming that part of Family Court's decision granting physical custody to the mother and permitting her relocation with the child.

Footnote 4: The father's therapist noted that he had treated the father for anxiety and depression and was aware of his past substance abuse; however, the therapist also acknowledged that the father had not indicated that the problem was ongoing at the time of treatment, suggesting that the father had not been entirely forthcoming about its extent.

Footnote 5: Although the father contends that these photographs and messages were undated and should have been given minimal weight, Family Court noted as much during the hearing and, on that point, we discern no bar to their consideration.

Footnote 6: We note that the child has a half sibling from the mother's side who resides in California.

Footnote 7: At oral argument, the father's counsel advised that he has secured housing in California to facilitate the one weekend a month he is provided with the child and, in availing himself of that visitation, he schedules his parenting weekends on consecutive weekends in order to save on travel costs.