Matter of Paul Y. v Patricia Z. (2021 NY Slip Op 00059)





Matter of Paul Y. v Patricia Z.


2021 NY Slip Op 00059


Decided on January 7, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 7, 2021

527187 528161

[*1]In the Matter of Paul Y., Appellant,
v
Patricia Z., Respondent. (Proceeding No. 1.) (And Another Related Proceeding.)
In the Matter of Patricia Z., Respondent,
v
Paul Y., Appellant. (Proceeding No. 3.) (And Two Other Related Proceedings.)

Calendar Date: November 16, 2020

Before: Garry, P.J., Lynch, Clark, Mulvey and Reynolds Fitzgerald, JJ.


Michelle I. Rosien, Philmont, for appellant.
David E. Woodin, Catskill, for respondent.
Christopher J. Obstarczyk, Latham, attorney for the children.



Reynolds Fitzgerald, J.
Appeals (1) from an order of the Family Court of Greene County (Tailleur, J.), entered June 14, 2018, which, among other things, dismissed petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, to hold respondent in willful violation of an order of visitation, (2) from an order of said court, entered November 19, 2018, which, among other things, granted petitioner's application, in proceeding No. 3 pursuant to Family Ct Act article 6, to modify a prior order of custody and for custody of the parties' child, and (3) from an order of said court, entered November 19, 2018, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 8, finding respondent to have committed a family offense and issued an order of protection.
Patricia Z. (hereinafter the mother) and Paul Y. (hereinafter the father) are the parents of two children, a son and a daughter (born in 2012 and 2013, respectively). The parties began their relationship in 2010. As a result of alleged multiple incidents of domestic violence perpetrated by the father against the mother, the mother temporarily moved to Texas and their relationship terminated in 2013, prior to the birth of their daughter. The father's petition seeking custody and the son's return to New York resulted in Family Court issuing a November 6, 2014 order that awarded the parties joint custody of their son. As to the daughter, Family Court issued the first of several temporary custody orders beginning in October 2014, granting the parties joint legal custody, with primary physical placement with the mother and parenting time with the father. However, a final custody order as to the daughter was never issued. In April 2015, Family Court issued a temporary order continuing joint legal custody of the children, with primary physical placement to the mother and parenting time to the father. Additionally, the parties were ordered to engage in coparenting sessions. In March 2016, the father filed a violation petition alleging that the mother had ceased her involvement in the coparenting sessions. An April 2016 temporary order granted the father parenting time with both children from Monday at 9:00 a.m. until Thursday at 4:00 p.m. each week.
On August 19, 2016, Family Court issued another temporary order continuing joint custody of both children, setting forth specific parenting time and again requiring the parties to engage in coparenting sessions. Additionally, the court ordered the parties to undergo a forensic evaluation. A few days later, the father petitioned to modify the custody order with respect to his son and sought a final order regarding his daughter. A trial was scheduled to commence in February 2017; however, the start was delayed.
In April 2017, an altercation occurred wherein the father allegedly refused to return the children to the mother at the end of his parenting time. The next day, the mother filed a petition seeking a temporary order [*2]suspending the father's parenting time with the children. Thereafter, the children allegedly disclosed that the father had been physically abusive to them, resulting in the mother filing a petition seeking a temporary order of protection against the father in favor of the mother and the children. The mother also petitioned for temporary sole custody of the children. A May 2017 temporary order continued joint legal custody, physical placement with the mother and therapeutic visitation to the father, and ordered the parties to engage in another forensic evaluation. On June 23, 2017, Family Court rescinded the father's therapeutic parenting time, temporarily granted him supervised parenting time, and allowed the mother to have decision-making authority in the event of a disagreement. Eight days of trial occurred between July 2017 and December 2017. In October 2017, in the midst of the trial, Family Court issued a temporary order, reinstating the father's therapeutic parenting time with the children.
In June 2018, Family Court dismissed the father's violation petition and the mother's petition seeking to suspend the father's parenting time. In November 2018, Family Court awarded the mother sole legal and physical custody of the children, granted the father supervised parenting time on a graduated schedule, ordered the father to complete a batterers program and individual psychotherapy, and ordered the mother to continue to bring the children to psychotherapy treatment. The court further ordered the parties to create "talking parents" accounts [FN1] to facilitate communication. Lastly, the court granted the mother's petition for a one-year order of protection in her favor and against the father, finding that the father physically and verbally abused the mother and committed the family offense of harassment in the second degree. The court declined to extend the order to include the children. The father appeals.[FN2]
The father argues that Family Court erred in granting the mother sole legal custody of the children. The November 2014 order granting the parties joint legal custody of the son was a final order of that court. Thus, the court must engage in a two-step analysis to determine if modification is warranted. "A parent seeking to modify an existing custody order first must demonstrate that a change in circumstances has occurred since the entry thereof that is sufficient to warrant the court undertaking a best interests analysis" (Matter of Emmanuel SS. v Thera SS., 152 AD3d 900, 901 [2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 905 [2017]; see Matter of Charles AA. v Annie BB., 157 AD3d 1037, 1038 [2018]). If this burden is met, "the parent then must show that modification of the underlying order is necessary to ensure the child's continued best interests" (Matter of Sweeney v Daub-Stearns, 166 AD3d 1340, 1341 [2018] [internal quotation marks and citations omitted]; see Matter of Maerz v Maerz, 165 AD3d 1404, 1405[*3][2018], lv denied 32 NY3d 914 [2019]). Conversely, all of the prior orders issued by Family Court concerning custody of the daughter were in the nature of temporary orders and, as such, the analysis is restricted to best interests. When undertaking a best interests analysis, the court's inquiry requires an examination of "such factors as each parent's relative fitness and past performance, ability to provide for the child's well-being and furnish a stable home environment, and willingness to foster relationships with the other parent" (Matter of Zaida DD. v Noel EE., 177 AD3d 1220, 1220 [2019] [internal quotation marks and citations omitted]; see Matter of Samantha GG. v George HH., 177 AD3d 1139, 1140 [2019]).
Although Family Court failed to make an express finding that a change in circumstances occurred, its decision is replete with findings that the parties' relationship had deteriorated to such a point that joint custody was no longer feasible (see Matter of Gerber v Gerber, 133 AD3d 1133, 1136 [2015], lv denied 27 NY3d 902 [2016]; Matter of Sonley v Sonley, 115 AD3d 1071, 1072 [2014]). The record reflects that both the father and the mother conceded that they could not coparent; they engaged in coparenting counseling for a period of three years, with two different counselors, to no avail. In addition, the mother and the father had such diverse parenting styles that they could rarely agree upon anything. Thus, a change in circumstances from the date of the original order regarding the son is evident, allowing the court to proceed to an inquiry into the best interests of both children (see Matter of John V. v Sarah W., 143 AD3d 1069, 1070 [2016]).
Turning to the children's best interests, Family Court was in a superior position to observe and evaluate the testimony elicited during this eight-day trial. "[G]reat deference is accorded to [Family Court's] credibility assessments and factual findings, and we will not disturb its custody determination so long as it is supported by a sound and substantial basis in the record" (Matter of Cooper v Williams, 161 AD3d 1235, 1236-1237 [2018] [internal quotation marks and citations omitted]; see Matter of Barrows v Sherwood, 138 AD3d 1195, 1196 [2016]). Here, the record clearly evidences Family Court's findings that the father is rigid, unbending, intense, critical, opinionated and judgmental. Although the father asserted that the mother was engaging in parental alienation, the forensic evaluator found this assertion baseless. On the other hand, Family Court found, and the record expressly demonstrates, that the mother is loving, kind, patient and nurturing. Although the attorney for the children had concerns regarding the mother's ability to discipline and appropriately parent the children, the mother sought and was receiving services to assist her. The attorney for the children advocated for sole custody to the mother and therapeutic parenting time to the father, and for the mother, the [*4]father and the children to receive/continue to receive therapy. Family Court's order sets this forth in great detail, including a graduated parenting time schedule for the father. "Family Court has broad discretion to develop a parenting time schedule in the best interests of the child[ren], and we will not disturb such determination unless it lacks a sound and substantial basis in the record" (Matter of Jill Q. v James R., 185 AD3d 1106, 1108 [2020]).
Family Court did not err in issuing a one-year order of protection prohibiting the father from contacting the mother. A person commits harassment in the second degree when, with the intent to harass, annoy or alarm another person, he or she "strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same" (Penal Law § 240.26 [1]). Here, the mother, who is seeking an order of protection, bears the burden of showing by a preponderance of the evidence that the father committed one or more family offenses (see Matter of Wilson v Wilson, 169 AD3d 1279, 1279 [2019]). "Whether a family offense has been committed is a factual issue to be resolved by Family Court, and its determinations regarding the credibility of witnesses are entitled to great weight on appeal" (Matter of Jasmin NN. v Jasmin C., 167 AD3d 1274, 1276 [2018] [internal quotation marks and citations omitted]). The mother testified extensively to four incidents of domestic violence wherein the father grabbed her by the hair and scrubbed the floor with her face, sat on her body and slapped her face, pushed her on the bed, jumped on her, kicked her in the back and twisted her arm, and threatened her with a knife. At trial, a coparenting counselor corroborated the mother's allegations and a domestic violence service provider confirmed that the mother called the domestic violence hotline and sought domestic violence crisis counseling. Family Court expressly found that the father physically and verbally abused the mother. "Accepting the mother's testimony as credible, as Family Court implicitly did, we conclude that a preponderance of the evidence supported the determination that the father committed . . . the family offense of harassment in the second degree" (Matter of Vincent X. v Christine Y., 151 AD3d 1229, 1230 [2017] [citations omitted]; see Matter of Amber JJ. v Michael KK., 82 AD3d 1558, 1560 [2011]). As such, Family Court did not abuse its discretion in issuing the order of protection (see Matter of Jennifer WW. v Mark WW., 143 AD3d 1063, 1065 [2016]). We have reviewed the father's remaining contentions and find them to be without merit.
Garry, P.J., Lynch, Clark and Mulvey, JJ., concur.
ORDERED the orders are affirmed, without costs.



Footnotes

Footnote 1: Talkingparents.com is a coparenting communication service that allows parents to make a recorded call to the other parent without disclosing either user's telephone number. The service also allows for messages, similar to text messages, to be recorded without being altered and displays a time stamp when the other parent has viewed it.

Footnote 2: As the father raises no arguments in his brief regarding the dismissal of his violation petition (proceeding No. 1), "we deem any challenge with respect thereto to be abandoned" (Matter of Fiacco v Fiacco, 158 AD3d 1011, 1012 [2018]).