Matter of Brian VV. v Heather WW. (2023 NY Slip Op 03733)

Matter of Brian VV. v Heather WW.

2023 NY Slip Op 03733

Decided on July 6, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 6, 2023

534619
[*1]In the Matter of Brian VV., Appellant,
v
Heather WW., Respondent.

Calendar Date:May 31, 2023

Before:Garry, P.J., Clark, Pritzker, Reynolds Fitzgerald and Ceresia, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Kristin A. Bluvas of counsel), for appellant.
Karen A. Leahy, Cortland, for respondent.
Donna C. Chin, Niverville, attorney for the child.

Garry, P.J.
Appeal from an order of the Family Court of Cortland County (David C. Alexander, J.), entered November 17, 2021, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for permission to relocate with the subject child.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2015). Pursuant to a May 2019 order entered on consent, the mother and the father shared joint legal and physical custody of the child. In April 2021, the father commenced this proceeding seeking permission to relocate with the child from Cortland County to Long Island. The father's request for a temporary order permitting relocation pending the resolution of his petition was denied, and, following a fact-finding hearing and a Lincoln hearing, Family Court granted sole legal custody to the mother and established a visitation schedule reflective of the father's move. The father appeals.
"The proposed relocation of a custodial parent provides the requisite change in circumstances required for Family Court to consider whether a modification of the existing custody order serves the best interests of the child[ ]" (Matter of Anthony F. v Kayla E., 191 AD3d 1108, 1108-1109 [3d Dept 2021] [citations omitted], lv denied 37 NY3d 901 [2021]; see Matter of Michael BB. v Kristen CC., 173 AD3d 1310, 1311 [3d Dept 2019]). The father, as the party seeking to relocate, "bears the burden of establishing that the move is in the [child's] best interests by a preponderance of the evidence" (Matter of Latoya B. v Marvin D., 191 AD3d 1123, 1124 [3d Dept 2021] [internal quotation marks and citation omitted]; see Matter of Michael BB. v Kristen CC., 173 AD3d at 1311). Among factors to be considered in determining whether relocation is in the child's best interests are the "parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (Matter of Tropea v Tropea, 87 NY2d 727, 740-741 [1996]; see Matter of Amber GG. v Eric HH.,___ AD3d ___, ___, 2023 NY Slip Op 03059, *1-2 [3d Dept 2023]). "Family Court's findings and credibility assessments are accorded great deference and will not be disturbed when supported by a sound and substantial basis in the record" (Matter of Holly F. v Daniel G., 193 AD3d 1292, 1293 [3d Dept 2021] [citations omitted], lvs denied 37 NY3d 904 [2021]; see Matter of James TT. v Shermaqiae UU., 184 AD3d 975, 977 [3d Dept 2020]).
The hearing evidence revealed that the parties lived together with the child in Florida until he was [*2]approximately two years old, at which time the family moved to Cortland County to be closer to the mother's family, who would help care for the child. The parties separated shortly after that move, and the mother left the child with the father for a number of months. However, following entry of the May 2019 order, the child resumed living with the mother pursuant to the terms of that order, most recently in the home of the maternal grandmother. At the time of the hearing, the father maintained a residence in Cortland County but regularly traveled to Long Island, where his fiancÉe resided. During the period when the father was splitting his time between the two locations, the parties agreed to deviate from the schedule set forth in the May 2019 order, and the child resultantly spent additional time with the mother.
The father testified that he and his fiancÉe were expecting their first child, born during the pendency of the extended fact-finding hearing, and, in anticipation of the birth and their marriage, he intended to relocate to Long Island. The father asserted that this had been his long-standing intention, aside from his new relationship, as he grew up and has extended family in that area. However, he did not yet have a settled plan for his relocation. The house that he and his fiancÉe had rented near her family was temporarily unavailable due to remodeling, and he had therefore arranged to move with the child into the two-bedroom house of his fiancÉe's parents, where a total of seven individuals would then be living. The father also did not know what his financial obligation for housing would be following the renovation. He later offered fabricated witness testimony regarding different housing arrangements that would address concerns of overcrowding, which was appropriately disregarded by Family Court. He added that it had been difficult for him to secure employment on Long Island due to this ongoing proceeding and that he was therefore working variable hours in construction "off the books," a job that was unavailable to him on days with inclement weather. He anticipated that other employment opportunities would become available once he relocated, specifically including a management position at a restaurant that was not yet open.
The father described the community on Long Island as "phenomenal" and opined that the area would offer more opportunities to the child. This included the opportunity to attend a new school district, which, according to the father, ranks in the top 20% of all schools in the state, more highly rated than the child's current school district. The father acknowledged that there are similar programs available to the child in the current school district but maintained that Long Island features cultural diversity and access to the outdoors that he believes would benefit the child.
The mother opposed the father's relocation request because it would remove the child from his established life in Cortland County and deprive [*3]her of regular parenting time. The evidence demonstrated that the child has his own bedroom in the grandmother's home, a set routine where he is cared for by both the mother and the grandmother, and a network of friends and extended family in Cortland County. The mother testified that she earns minimum wage and that it would be cost prohibitive for her to visit the child on a regular basis if the relocation petition was granted. Comparatively, the father's testimony made clear that he had the resources and ability to facilitate visitation following his move.
The mother also raised significant concerns regarding certain individuals with whom the father was involved, including friends who had used illegal drugs in front of the child and an individual who had been arrested for assaulting the father. There was also testimony that the father's fiancÉe was being stalked by a former paramour. The evidence further revealed that the father promoted a relationship between the child and his maternal grandfather, who, according to the credited testimony, had a long-standing history of domestic violence against the maternal grandmother, including conduct in the presence of his children.
Initially, we must reject the argument of the mother and the attorney for the child that the father had an impermissible motive for relocation that necessitated dismissal of his petition. Proposed relocation for the purpose of remarriage is a "valid motive[ ] that should not be summarily rejected, at least where the over-all impact on the child would be beneficial" (Matter of Tropea v Tropea, 87 NY2d at 739). That said, we find Family Court's conclusion that it would be in the child's best interests to remain with the mother in Cortland County to be supported by a sound and substantial basis in the record.
Contrary to the father's contention, Family Court's finding that the child has a positive and loving relationship with the mother is supported. Although the mother, age 19 at the time of the child's birth, had initially resorted to yelling at the child and the use of physical discipline, the credited evidence demonstrated that she had more recently engaged in parenting classes and mental health counseling, on her own accord, and had grown in her parenting skills. As for the relocation, the father's proposed living situation on Long Island proved to be tenuous; it was uncertain whether the father would have been able to procure stable employment there, and it would have been unfeasible to place the child in the increasingly crowded home of the fiancÉes' parents. In contrast, continued placement with the mother maintained the child's stability in providing him with both a private space and support from his extended family (see Matter of Shane FF. v Alicia GG., 199 AD3d 1264, 1266 [3d Dept 2021]; Matter of Spaulding v Stewart, 124 AD3d 1111, 1112-1113 [3d Dept 2015], lv denied 25 NY3d 903 [2015]). Relocation of the child would have also drastically reduced the mother's contact [*4]with the child due to the cost of travel, whereas there was no evidence to suggest that the father's relationship with the child would be negatively impacted with suitable visitation arrangements (see Matter of Kristen MM. v Christopher LL., 182 AD3d 658, 661, 662 [3d Dept 2020]; Matter of Lynk v Ehrenreich, 158 AD3d 1004, 1006 [3d Dept 2018], lv denied 31 NY3d 909 [2018]; Matter of Spaulding v Stewart, 124 AD3d at 1113). Although the father did offer some favorable information regarding the Long Island school district that the child would attend, he agreed that similar educational programs exist in Cortland County. In sum, Family Court's custodial determination was based upon proper consideration of the relevant factors (see Matter of Tropea v Tropea, 87 NY2d at 740-741), and we discern no basis to disturb it.
Clark, Pritzker, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.