Matter of Linden L. v Justin M. (2026 NY Slip Op 00944)

Matter of Linden L. v Justin M.

2026 NY Slip Op 00944

Decided on February 19, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 19, 2026

CV-24-0828
[*1]In the Matter of Linden L., Appellant,
vJustin M., Respondent. (Proceeding No. 1.)
In the Matter of Justin M., Respondent,
vLinden L., Appellant. (Proceeding No. 2.) (And Another Related Proceeding.)

Calendar Date:January 9, 2026

Before:Clark, J.P., Pritzker, McShan, Powers and Corcoran, JJ.

Barbara Ann Montena, Ballston Spa, for appellant.
Justin M., Peru, respondent pro se.
Omshanti Parnes, Plattsburgh, attorney for the children.

Pritzker, J.
Appeal from an order of the Family Court of Clinton County (Brendon Dupree, Referee), entered April 11, 2024, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Linden L. (hereinafter the mother) and Justin M. (hereinafter the father) are the parents of the subject children (born in 2011 and 2014). In September 2018, the mother and the father entered into a custody order upon consent, pursuant to which they shared joint legal and physical custody of the children with, as relevant here, an alternate week rotating schedule. At the time of the 2018 order, both the mother and the father lived in the Town of Plattsburgh, Clinton County. In September 2022, the mother filed a modification petition seeking sole custody of the children and permission to relocate them to St. Albans, Vermont. In October 2022, the father answered the mother's petition and cross-petitioned for modification of the prior order requesting sole legal and physical custody of the children premised on the mother's constant efforts to undermine his relationships with the children as well as her inability to coparent. Then, in May 2023, the mother filed another modification petition, this time requesting that the children be allowed to move with her to Michigan, where the mother was relocating with her "life partner" (hereinafter the stepfather) due to his new job assignment.
Following a multiday trial on all three petitions and a Lincoln hearing, Family Court denied the mother's petitions, finding that while there was a change in circumstances, as evidenced by the mother's move out of state and the deteriorating parental relationship, the mother failed to prove that it would be in the children's best interests to relocate with her to Michigan. Furthermore, the court granted the father's petition, finding, among other things, that the mother tended to alienate the father. Thus, the court awarded sole legal and physical custody to the father while fashioning a detailed schedule of extensive parenting time for the mother with the children in Michigan. The mother appeals.[FN1]
On appeal, the mother does not challenge Family Court's determination that there was a change in circumstances since entry of the prior order based upon, among other things, the mother's relocation to Vermont and then Michigan (see Matter of Mark JJ. v Stephanie JJ., 240 AD3d 1025, 1026 [3d Dept 2025]; Matter of Carla UU. v Cameron UU., 227 AD3d 1257, 1259 [3d Dept 2024]). As such, we turn our focus to the mother's assertion that Family Court's determination that it was in the best interests of the children for the father to have sole legal and physical custody is not supported by a sound and substantial basis in the record. A best interests determination "requires consideration of, among other factors, the quality of the home environments of each parent, the need for stability in the child[ren]'s li[ves], the degree [*2]to which each parent has complied with the existing custodial arrangement and whether he or she will promote a positive relationship between the child[ren] and the other parent, as well as each parent's past performance and ability to provide for the child[ren]'s physical, emotional and intellectual well-being" (Matter of Ronald R. v Natasha FF., 217 AD3d 1163, 1164 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Mary N. v Scott M.,218 AD3d 890, 892 [3d Dept 2023]). "Additionally, in instances involving a potential relocation, courts must consider, among other factors, each parent's reasons for seeking or opposing the move, the quality of the relationships between the children and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the children's future contact with the noncustodial parent, the degree to which the custodial parent's and children's lives may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and children through suitable parenting time arrangements" (Matter of Mark JJ. v Stephanie JJ., 240 AD3d at 1027 [internal quotation marks, brackets and citations omitted]; see Matter of Brian VV. v Heather WW., 218 AD3d 860, 861 [3d Dept 2023]). "A custodial determination depends to a great extent upon an assessment of the testimony, character and sincerity of the parties [and,] [f]or this reason, it is well established that, given its superior position to observe the witnesses, deference is ordinarily accorded to Family Court's findings in this respect" (Matter of Joanna PP. v Ohad PP., 230 AD3d 1445, 1447 [3d Dept 2024] [citations omitted]; see Matter of Robert C. v Katlyn D., 230 AD3d 1392, 1394 [3d Dept 2024]).
As to the issue of the mother's and the father's respective relationships with the children, testimony made clear that both parents are heavily involved in all aspects of the children's lives and have taken an active role in providing for their medical, emotional, academic and social well-being. Although, at the time of the hearing, the children appeared to have a greater attachment to the mother and historically trusted her more than the father, especially in medical situations, the father reported that his relationship with the children had vastly improved. Testimony also demonstrated that the children appeared to have good relationships with the stepfather and the father's wife (hereinafter the stepmother). Despite this, it is clear from several explosive incidents that the mother and the stepmother do not have a good relationship. As to the prospect of the mother's move to Michigan, she testified that not only would this move provide greater financial opportunities for her and the children, but the children have demonstrated great excitement at the prospect of moving there. Furthermore, through her own research, the mother gathered that the children would [*3]attend schools in Michigan which are significantly better than those in Plattsburgh, though the mother was unable to articulate how the Michigan schools are superior. However, other testimony throughout the hearing revealed that the children are currently established in a school district wherein they are thriving academically and socially. Both the children are heavily involved in extracurricular activities, including playing multiple instruments as well as athletics, which further provide them with an established social community. Thus, remaining in this area would provide them greater stability.
The testimony heavily featured the mother's alleged attempts to alienate the children from the father. As pointed out by the father and the forensic evaluator, these include: directing the children to keep the mother's last pregnancy a secret until a designated time; making statements to medical personnel and in front of the children that she felt unsafe around the father; and telling the children to write down the negative feelings they had toward the father in their journals to discuss with their counselors. The father and forensic evaluator testified that these various attempts at alienation not only placed great strain on the father's relationship with the children, but it created an "an unhealthy and unnecessarily artificial barrier between the two halves of the children's lives," forcing them to hide their positive feelings toward the father while in front of the mother. The forensic evaluator explained that the mother has a negative impact on the children due to her inability to comprehend how her actions, driven by her poor relationship with the father and the stepmother, cause the children to feel the need to protect her, especially as evidenced by the older child's need to call the mother to check on her physical safety on a daily basis. Conversely, the forensic evaluator opined that the father is a positive influence in the children's lives, ensuring critical social development opportunities through their involvement with a wide variety of activities, and he has demonstrated sound basic parenting skills and considerable involvement in all aspects of the children's lives. The father has routinely allowed liberal telephonic contact between the children and the mother, with some limitations when it interferes with their designated family dinner time or the children's sleep.
As indicated by Family Court in its decision, as well as the testimony and written report of the forensic evaluator, neither the mother nor the father are without fault for the breakdown of the parental relationship. Both parties have extensive histories of trauma which have added to their difficult relationship and communication issues. However, testimony revealed that the mother was primarily responsible for the lack of communication. One particular instance which demonstrates this is when the older child was in the emergency room and the mother, rather than keeping the father [*4]abreast of the situation, directed him to request the child's hospital records for any information he was seeking. Furthermore, although some purported instances of parental alienation by the mother raised by the forensic evaluator have perhaps rational explanations, it was within the court's discretion to choose to credit the evaluator's opinions on the issue when analyzing the children's best interests (see Matter of Jessica D. v Michael E., 182 AD3d 643, 645 [3d Dept 2020]). Based on the foregoing, in light of the mother's move to Michigan as well as her history of attempting to alienate the father, and affording great deference to the court's credibility determinations (see Matter of Michelle L. v Steven M., 227 AD3d 1159, 1161-1162 [3d Dept 2024]; Matter of Paul Y. v Patricia Z., 190 AD3d 1038, 1041-1042 [3d Dept 2021]), Family's Court's decision to award the father sole legal custody has a sound and substantial basis in the record (see Matter of Carla UU. v Cameron UU., 227 AD3d at 1261; Matter of Alexis WW. v Adam XX., 220 AD3d 1094, 1096-1097 [3d Dept 2023]).[FN2] The father's remaining contentions, to the extent not specifically addressed herein, have been examined and found to be lacking in merit.
Clark, J.P., McShan, Powers and Corcoran, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: We note that the attorney for the children on this appeal has filed a brief on the children's behalf, which we have carefully considered in reaching our determination.

Footnote 2: We also note that Family Court included a mutual order provision regarding the prompt sharing of school and medical information.